1  ALAN A. GREENBERG, State Bar No. 150827
      *AGreenberg@GGTrialLaw.com*
2  WAYNE R. GROSS, State Bar No. 138828
      *WGross@GGTrialLaw.com*
3  ADRIANNE E. MARSHACK, State Bar No. 253682
      *AMarshack@GGTrialLaw.com*
4  LEANNA C. COSTANTINI, State Bar No. 294028
      *LCostantini@GGTrialLaw.com*
5  GREENBERG GROSS LLP
   650 Town Center Drive, Suite 1750
6  Costa Mesa, California 92626
   Telephone: (949) 383-2800
7  Facsimile: (949) 383-2801

8  Attorneys for Plaintiff JENNIFER DAVIES

9

10                   UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12

13  JENNIFER DAVIES, an individual,          Case No.

14              Plaintiff,                   **COMPLAINT FOR DAMAGES**

15        v.                                 1. **VIOLATION OF THE DODD-
                                                FRANK WALL STREET
16  BROADCOM CORPORATION, a                     REFORM AND CONSUMER
    California corporation,                      PROTECTION ACT (15 U.S.C.
17                                               § 78u-6);**
                Defendant.                   2. **WAGE DISCRIMINATION
18                                              (29 U.S.C. § 206(d) & LABOR
                                                CODE § 1197.5);**
19                                           3. **RETALIATION (29 U.S.C.
                                                § 215(a)(3));**
20                                           4. **DISCRIMINATION (GOV.
                                                CODE § 12940(a));**
21                                           5. **FAILURE TO PREVENT
                                                DISCRIMINATION (GOV.
22                                              CODE § 12940(k));**
                                             6. **RETALIATION (GOV. CODE
23                                              § 12940(h));**
                                             7. **RETALIATION (LABOR
24                                              CODE § 1102.5);**
                                             8. **WRONGFUL TERMINATION
25                                              IN VIOLATION OF PUBLIC
                                                POLICY**
26                                           9. **FRAUD; AND**
                                             10. **NEGLIGENT
27                                               MISREPRESENTATION.**

28                                           **DEMAND FOR JURY TRIAL**

Plaintiff Jennifer Davies ("Ms. Davies") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Ms. Davies' claims for damages arise, in part, under the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), 15 U.S.C. § 78u-6, the Equal Pay Act, 29 U.S.C. § 206(d), and the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).  The Court has supplemental jurisdiction over the remaining state statutory and common law claims pursuant to 28 U.S.C. § 1367, given that all the claims are so related they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391, given that Defendant resides, and a substantial part of the events giving rise to each of Ms. Davies' claims occurred, in Orange County, California.

## NATURE OF ACTION

3.      Defendant Broadcom Corporation (NASDAQ: BRCM) ("Broadcom" or the "Company"), a global leader in the semiconductor industry, unapologetically maintains a "boys club" where male employees and executives degrade and objectify women without recourse and where the Company has imposed institutional barriers to advancement for female employees.

4.      Lacking any established criteria or formal processes for promotions, Broadcom confers its male-dominated leadership complete discretion to make promotion and compensation decisions in an unlawfully discriminatory manner.  In 2009, Broadcom employed only one female at the level of vice president or higher. By 2014, little progress had been made—only 1 of 9 executive vice president-level employees (those reporting to the CEO) were women (11%), 3 of 20 senior vice presidents were women (15%), and only 9 of 78 vice presidents were female (11.5%).  In those rare instances in which women are promoted to vice president, they are required to work harder and wait longer than their male counterparts to

achieve equal compensation and recognition.  In one telling example, a female senior director was transferred to a position previously occupied by a male vice president, and though performing the same duties in the same manner as her male predecessor, she was forced to wait approximately five years before receiving a vice president title and commensurate compensation.  In stark contrast, male senior directors are immediately promoted to vice president when they assume the duties of former vice presidents.

5.      The pervasive male-preferential paradigm and effect of Broadcom's discrimination against women is neither limited to executive-level promotions nor limited to actions by male executives.  For example, the former head of Human Resources—a woman—explicitly directed Ms. Davies to "hire a man" when Ms. Davies was hiring for Broadcom's employment law group.  Although Ms. Davies refused to follow this directive and instead hired the most qualified candidates, such refusal had little impact on the Company's overall hiring practices; a fact that has recently undergone public scrutiny.  In 2014, national civil rights leaders pressed major U.S. technology companies to disclose statistics regarding the gender and ethnicity of their employees.  Broadcom refused to comply.  Had Broadcom disclosed such information, as did Facebook, Google, Yahoo, LinkedIn, and other companies, it would have revealed that the vast majority of Broadcom's workforce, approximately ██%,[1] is male.

6.      Despite Broadcom's poor track record, Ms. Davies was determined to break the glass ceiling at Broadcom.  She began her employment with Broadcom in

---

[1] Portions of this Complaint have been redacted at Broadcom's request and in response to Broadcom's contention that such information is protected from disclosure as a result of the "Confidentiality and Invention Assignment Agreement" Ms. Davies signed on or about October 21, 2006, attached hereto as **Exhibit A**.  Although Ms. Davies does not agree that any of such information is subject to redaction, the requested redactions have been made to enable judicial review of the issue.

November 2006, as the Company's first labor and employment lawyer.  By May 2012, Ms. Davies had successfully built and led an essential group within the Company's legal department, the global employment law function.  Ms. Davies excelled at her job and received, without exception, "above expectations" performance reviews, with the highest possible score in integrity and ethics, and two CEO Achievement and Recognition Awards, which are given to less than 1% of Broadcom employees annually.  Moreover, in February 2013, as an incentive to remain with the Company for at least three additional years, Ms. Davies was awarded more than 10,600 restricted stock units that were scheduled to vest in their entirety in 2016.

7.     Based on her achievements and the global scope of her work, Ms. Davies was, in all respects, a qualified candidate for promotion to vice president. Ms. Davies expressed her aspiration of becoming a vice president to several members of Broadcom's upper-level management.  Unfortunately, Ms. Davies soon learned that Broadcom frowned upon such expressed ambition from female employees and preferred them to be seen and not heard.

8.     After expressing such ambition to Broadcom's general counsel, Arthur Chong, and later being deridingly compared to a "kitten with a ball of yarn" by Mr. Chong, Ms. Davies realized that her prospects for promotion in the legal group were dim.  Such realization was underscored by DeAnn Work, Ms. Davies' then manager, who said that the employment law position was not vice-president eligible.

9.     Seizing upon Ms. Davies' ambitions, Broadcom convinced Ms. Davies to leave her position in the legal group in favor of a position in Human Resources by (falsely) promising a vice president promotion.  Unbeknownst to Ms. Davies and despite assurances to the contrary, however, the HR position into which she was placed was a "dead-end," with no prospects of promotion to vice president.  Making matters worse, when Broadcom hired a replacement for Ms. Davies' employment law position, it hired a man, Mark Daniels, to fill the role and upgraded the position

1   to vice president, while at the same time reducing the responsibilities of the position.

2   Ms. Davies' complaints about the unfair treatment she had received and about the

3   resentment toward the Equal Pay Act expressed by her manager—the head of HR—

4   were met with hostility and retaliation.

5         10.    The death knell for Ms. Davies' career at Broadcom sounded in 2014,

6   when Ms. Davies uncovered and reported ██████████████████████████

7   ████████████████████████████████████████████████████

8   ███████████ Broadcom turned a blind eye to the reported ████████████

9   ██████, and just three months later, Ms. Davies was suddenly and unexpectedly

10  told that she had been selected for "layoff." This, however, was not any ordinary

11  layoff. Rather, Broadcom terminated Ms. Davies in retaliation for her reporting of

12  ████████████████████████████████████ and demanding treatment

13  equal to that received by her male counterparts.

14                                    **PARTIES**

15        11.    Ms. Davies is an individual residing in Orange County, California.

16        12.    Broadcom is a California corporation with its principal place of

17  business in Orange County, California. Broadcom is a publicly traded company

18  with securities registered under section 12(g) of the Securities Exchange Act of

19  1934. Broadcom reported total annual net revenue of more than $8 billion for fiscal

20  year-end 2013 and has a total market capitalization of approximately $30 billion.

21        13.    Ms. Davies is a whistleblower as defined by the Dodd-Frank Act, 15

22  U.S.C. § 78u-6(h)(1)(A)(iii) and 17 C.F.R. §240.21F-2(b)(1). Ms. Davies' reporting

23  of ███████████████████████████████████ is protected under section

24  806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A(a)(1)(c).

25                    **FACTUAL ALLEGATIONS**

26  **I.**    **Broadcom's Discriminatory and Hostile Work Environment Toward**

27      **Women**

28        14.    Broadcom is a global leader and innovator in semiconductor solutions

for wired and wireless communications.  It employs more than 11,000 individuals in 40 offices across 25 countries.  In stark contrast to its laudable technological achievements, however, Broadcom has a shameful history, pattern, and practice of discrimination against women.

15.     In recent years, including during Ms. Davies' tenure, Broadcom's efforts at minimizing women's roles in the Company were carried out in part by a female executive, Terri Timberman, who led Broadcom's Human Resources Department for more than five years and had a preference for working with men. As the sole person Broadcom relied upon for recommending candidates for executive-level promotions or lateral hires in Human Resources, Ms. Timberman secured vice president promotions for two male employees who had limited experience as senior directors (one year and two years, respectively).  Her hostility toward women was particularly notable among those with whom she worked most closely.  When Ms. Timberman became Broadcom's head of HR in 2009, she had seven direct reports, six of whom were female.  By February 2014, only three of her ten direct reports were female.  Ms. Timberman hired four direct reports during her tenure, all of whom were men.

16.     On two separate occasions when Ms. Davies received authorization to hire employment attorneys, she sought Ms. Timberman's advice because the HR group was the primary client of the Company's employment law function.  Both times Ms. Timberman unabashedly told Ms. Davies that she should "hire a man." Ms. Davies reported Ms. Timberman's discriminatory conduct to Broadcom's Deputy General Counsel, who failed to take any steps to correct Ms. Timberman. Ignoring Ms. Timberman's direction, Ms. Davies interviewed men and women for the roles and hired the candidates she found to be most qualified; both of whom happened to be women.  Ms. Davies also hired an employee to report to her when she was in the HR role.  Again, Ms. Timberman told Ms. Davies that she should hire a man.  Again, however, Ms. Davies determined that the most qualified candidate

COMPLAINT FOR DAMAGES

1  was a woman and hired her.  Ms. Davies' resistance to promoting Ms. Timberman's

2  discriminatory agenda angered Ms. Timberman.

3        17.    Broadcom's marginalization of women fosters a culture that permits the

4  objectification and degradation of women.  For example, at a business meeting in

5  Asia, female employees (including Ms. Davies) were directed to line up and

6  "sashay" down the aisle as if they were models to entertain the male employees.

7  The men whistled and laughed at the women as they complied with their instruction

8  to sway their hips down the imaginary catwalk.  Ms. Davies found the experience to

9  be humiliating.  She advised the male executives in charge of the meeting that such

10  a practice should not take place in the future and informed Ms. Timberman of the

11  conduct, yet Broadcom took no action.

12        18.    Other male employees took advantage of Broadcom's uninhibited work

13  environment for their advancement within the Company.  For example, ▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20        19.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  To allegedly serve as a role

23  model to the Company, Ms. Timberman instituted a purported "zero tolerance"

24  policy for HR employees caught engaging in these practices.  However, when a

25  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27  ▮▮▮▮▮▮▮▮▮▮▮▮

28

COMPLAINT FOR DAMAGES

**II.     Broadcom's Discrimination and Retaliation Against Ms. Davies**

     A.     <u>Ms. Davies is Repeatedly Denied Promotions Afforded to Similarly</u>
           <u>Situated Males and Complains of Broadcom's Gender Discrimination.</u>

20.     Despite the discriminatory and hostile environment toward women at Broadcom, Ms. Davies believed that she could break the glass ceiling and effect a change in Broadcom's male-dominated culture.  Ms. Davies has been a labor and employment attorney since 1995.  After many years of practicing labor law at top law firms, including Gibson, Dunn & Crutcher and Paul Hastings, she joined Broadcom in 2006 as the Company's first labor and employment lawyer.  For 6 years, Ms. Davies led the global employment law function before being recruited to HR in 2012.  During her entire tenure, Ms. Davies was an outstanding and exemplary employee of Broadcom in all respects.

21.     Not long after Ms. Davies became a Senior Director, Ms. Davies began expressing her goal of continuing to advance in her career at Broadcom and becoming vice president to various individuals with authority over executive-level promotions.  The Deputy General Counsel, however, told Ms. Davies that her employment law position was not vice president-eligible.  Ms. Davies received further confirmation that she would not be taken seriously as a candidate for vice president in the legal department at a meeting with the General Counsel in 2012.  During the meeting, the General Counsel repeatedly told Ms. Davies and two female colleagues who comprised the company's in-house employment law group that they were like "kittens with balls of yarn," as contrasted with the Company's intellectual property lawyers, all of whom were male.

22.     Understanding Ms. Davies' goal of becoming a vice president, Ms. Timberman suggested that Ms. Davies move to Human Resources.  Specifically, Ms. Timberman offered to create a corporate-level HR position for Ms. Davies, which, according to Ms. Timberman, would become a vice president position within two years.  Excited for the promise of receiving the same recognition as her male

1  counterparts, Ms. Davies agreed and, on May 1, 2012, transferred to Human

2  Resources in the position of Senior Director, Policy & Investigations, reporting

3  directly to Ms. Timberman.

4        23.    After Ms. Davies transferred from her employment law role in May

5  2012, Broadcom posted the opening in Ms. Davies' former position and sought

6  another attorney at the senior director level to fill it.  Ms. Davies participated in the

7  interview process and interviewed two female employment attorneys, both of whom

8  were qualified for the position.  At Ms. Timberman's urging, however, Broadcom

9  extended an offer to a male, Mark Daniels, whose years and type of experience were

10 similar to Ms. Davies'.  Ms. Davies later learned that Broadcom had hired Mr.

11 Daniels as a vice president, despite the numerous representations that had been

12 made to Ms. Davies that the employment law position was not vice president-

13 eligible.

14       24.    Despite performing the same job functions, the compensation that Mr.

15 Daniels received as a vice president when he began at Broadcom was substantially

16 higher than that of Ms. Davies.  For example, vice presidents then received more

17 than three times the value of equity as senior directors.  Moreover, the target bonus

18 for vice presidents is 50% of base salary, a significantly higher target than the 30%

19 target bonus for senior directors.  Due to Broadcom's financial performance, the

20 bonuses were regularly paid at greater than 100% of target.  The compensation

21 discrepancy was further exacerbated by the value of cliff vesting awards which,

22 again, could exceed three times the amount awarded to senior directors.

23       25.    These compensation differences were particularly egregious given that

24 Ms. Davies' knowledge of domestic and international employment law exceeded

25 that of Mr. Daniels.  Mr. Daniels ███████████████████████████████████████

26 ███████████████████████████████████████████████  Moreover, the

27 duties of the employment law position vacated by Ms. Davies were decreased soon

28 after Mr. Daniels took the role.  Thus, Mr. Daniels had less responsibility but was

1   given the vice president title and concomitant economic benefits.

2       26.     When Ms. Davies learned that Mr. Daniels had been hired as a vice

3   president, she expressed to Ms. Timberman her frustration that she had been told the

4   position was not vice president-eligible.  Ms. Timberman offered no explanation and

5   instead warned Ms. Davies not to "undermine" Mr. Daniels.  Ms. Davies had no

6   such intentions.  Further, although Ms. Davies felt betrayed by the differential

7   treatment, she still believed that Ms. Timberman would promote her in early 2014 as

8   promised.

9       27.     Before Ms. Davies accepted the role in Human Resources, Ms.

10  Timberman told Ms. Davies that she could expect a vice president promotion during

11  the 2013 Focal (Broadcom's annual review process), the results of which were

12  communicated in early 2014.  Although Ms. Davies, as usual, received excellent

13  reviews, she did not receive the promised promotion to vice president.  When Ms.

14  Davies requested an explanation, Ms. Timberman claimed—for the first time in the

15  approximate two years that Ms. Davies occupied her position in HR—that the

16  position was "not vice president-eligible."  Ms. Timberman admitted that she had

17  repeatedly told Ms. Davies that the position was vice president-eligible, and that Ms.

18  Davies more than met expectations in that role.  Nonetheless, Ms. Timberman

19  sought to justify her new-found contention that the position was not vice president-

20  eligible by claiming that the role was "not strategic" enough to warrant such a title.

21      28.     Ms. Davies was bewildered.  Her position in HR was not only global in

22  scope, but also involved strategic and complex special project work.  Frustrated that

23  Ms. Timberman had induced Ms. Davies under false pretenses to leave her

24  employment law role, Ms. Davies asked whether anyone considered offering the

25  position back to Ms. Davies when Broadcom decided to make it a vice president

26  position.  Ms. Timbeman curtly responded "no, you can yell at me for that" and

27  chastised Ms. Davies for being outspoken about her goal of becoming vice

28  president.  Ms. Davies tried to explain to Ms. Timberman the importance of

1   receiving proper recognition and compensation for her contributions to the

2   Company—particularly considering Broadcom had readily afforded it to similarly

3   situated males employees—but none of this mattered to Ms. Timberman or

4   Broadcom.

5       29.    Ms. Timberman's unlawful motives became all the more apparent to

6   Ms. Davies during a conversation in which Ms. Timberman stated that she "hated"

7   the Equal Pay Act, which prohibits gender-based discrimination.  According to Ms.

8   Timberman, it was "not [her] job to correct for women's inability to negotiate for

9   themselves."  Ms. Davies challenged Ms. Timberman's position by responding that

10  women should receive equal pay for equal work.  Ms. Timberman, however, was

11  unwavering in her views and became angry with Ms. Davies for expressing her own.

12      30.    Following Ms. Davies' complaints, Ms. Timberman became

13  increasingly cold with Ms. Davies.  Her hostility only worsened when Ms. Davies

14  began uncovering ███████████████████████████████

15  ███████████████████

16      B.    <u>Ms. Davies Uncovers and Reports</u> ████████████████

17  █████████████

18      31.    As the Senior Director of Policy and Investigations, Ms. Davies was

19  responsible for conducting fact-finding internal investigations.  In or about

20  November 2013, Ms. Davies was directed by HR to ████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████

24  ████████████████████████████████████

25  ██████████████████

26      32.    Ms. Davies sought to investigate further the ███████████████

27  ████████████████████████████████████

28  ████████████████████████████████████

COMPLAINT FOR DAMAGES

1

2

3

4          33.     Ms. Davies subsequently found

5

6

7

8

9          34.     In or around March 2014, Ms. Davies

10

11

12

13

14

15

16

17

18         35.     Ms. Davies recommended that

19                                         Ms. Davies later learned that

20

21

22

23

24         36.     Upon conclusion of the investigation, Ms. Davies submitted to

25  Broadcom a detailed factual report in which she described

26

27

28

1  ██████████████████████ Further, ██████████████████████

2  ██████████████████████ Ms. Davies' expressed concern that

3  ███████████████████████████████████████████████

4  ████████████████████████ and recommended that ████████

5  ███████████████████████████████████████████████

6  ████████████████████████████████ Ms. Davies also

7  recommended that ████████████████████████████████

8  ██████████████████████

9      37.  ██████████████████████████████

10 █████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 ████████████████████

13     C.    <u>Broadcom Retaliates Against Ms. Davies Under the Guise of a</u>

14             <u>"Layoff."</u>

15     38.  During Ms. Davies' investigation of ██████████ from November

16 2013 to March 2014, her career prospects at Broadcom, which were already

17 precarious based on her gender and her legitimate and protected complaints, became

18 even more so.  During the early part of Ms. Davies' investigation, ███████████

19 █████████████████████████████████████████████████

20 Ms. Davies observed a change in Ms. Timberman's tone and attitude.  Indeed, Ms.

21 Timberman became progressively less friendly and no longer even attempted to hide

22 her obvious disdain for women, particularly women who expressed any ambition.

23 What is now evident is that Ms. Timberman, in the winter of 2013 and early spring

24 2014, had conceived a plan to remove Ms. Davies because she was a female lawyer

25 who blew the whistle ████████████████ and sought to receive the same

26 opportunities afforded to her male counterparts.

27     39.  Ms. Timberman began the process of driving out Ms. Davies in

28 approximately March 2014, when Ms. Timberman suddenly claimed that she needed

1   to reorganize her group.  She told Ms. Davies that she wanted to place her in a

2   "line" role that would support the Mobile Platform Solutions ("MPS") group and

3   report to Ms. Davies' male colleague.  To entice her to make the move voluntarily,

4   Ms. Timberman stated that the role would place Ms. Davies on the "fast track" to

5   vice president and that she would finally receive her well-deserved promotion

6   within a year.  Unbeknownst to Ms. Davies, however, the MPS role was a dead-end.

7   When Ms. Timberman made these representations to Ms. Davies, Ms. Timberman

8   knew that the MPS business shortly would be wound up, and when the MPS

9   business inevitably closed, Ms. Davies would lose her job at Broadcom.

10         40.    Ms. Timberman's hostility toward Ms. Davies and her intention to

11   drive Ms. Davies out of Broadcom is underscored by actions taken by Ms.

12   Timberman as part of the reorganization to protect the positions of Ms. Davies' male

13   colleagues.  For example, while setting Ms. Davies up to be terminated, as part of

14   the reorganization, Ms. Timberman transferred a male senior director—whose

15   performance reviews were inferior to those of Ms. Davies and who had been at

16   Broadcom for far less time—into a position that Ms. Timberman knew would be

17   protected when MPS shutdown.

18         41.    When Ms. Timberman transferred Ms. Davies out of Policy &

19   Investigations, she also minimized her influence and access to key decision-makers

20   at Broadcom.  Ms. Davies' office was moved from the 4th floor of Building 1 (where

21   the CEO, CFO, General Counsel, Broadcom's co-founder (Dr. Samueli), and Ms.

22   Timberman maintained their offices) to Building 9, off the beaten path.  Ms. Davies'

23   Policy & Investigation responsibilities were then transferred to a male colleague

24   who was significantly less qualified than Ms. Davies for the position.  Thus, after

25   being transferred to the "line" role, Ms. Davies no longer had corporate-wide

26   impact, and her influence was limited to the MPS line of business.

27         42.    Ms. Davies complied with Ms. Timberman's directives and agreed to

28   take the MPS role based on the lie that it would "fast track" her to vice president.

However, on June 4, 2014, approximately three months after Ms. Davies assumed the MPS role, Broadcom announced that MPS either would be shut down or sold. The day before the official announcement, Ms. Davies' manager informed Ms. Davies of the sale/shut down and told her that her position would be eliminated.

43.     Tellingly, Ms. Davies was the only person in HR who had been definitively selected for layoff before Broadcom's official announcement.  For all other employees in functions supporting the MPS business group, Ms. Timberman put in place procedures to ensure that layoffs would be fair and to avoid exposure to liability.  Executives and HR were required to document, after the Company announced the MPS sale/shut down, which positions would be eliminated and which employees would be terminated.  Despite this policy, Ms. Timberman decided, long before Broadcom announced the MPS shutdown, that Ms. Davies' position would be eliminated and she would be terminated.

44.     On the day of the announcement, Ms. Davies went to Ms. Timberman's office to discuss her termination.  During the discussion, it became evident that Ms. Timberman had known the business would be shut down when she placed Ms. Davies into the MPS role in the spring.  Ms. Davies asked why she had been taken out of the Policy & Investigations position and placed in the MPS role when Ms. Timberman knew the business would be shut down.  In response, Ms. Timberman implausibly claimed that Ms. Davies' Policy & Investigations role would have been "even more vulnerable."  The Policy & Investigations position, however, exists to this day.  Further, Ms. Timberman admitted to Ms. Davies that she had advance knowledge that MPS would be shut down, saying only, "I was hoping this wouldn't happen until September."

45.     During the meeting, Ms. Davies became emotional.  In reliance on Ms. Timberman's previous representations that she would become a vice president, Ms. Davies had purchased a new home to be closer to the Company and to re-start her life with her husband after the recent tragic death of her teenage stepson.  She

-15-

1 explained to Ms. Timberman that she was fearful of losing her home and disrupting

2 the stability she was trying to create for her family following their loss.  Instead of

3 displaying empathy toward Ms. Davies, Ms. Timberman angrily chastised Ms.

4 Davies for not maintaining a "poker face" and demanded that she "keep it together."

5 Ms. Davies found Ms. Timberman's response to be stunning in its insensitivity.

6     46.    Following the announcement, Ms. Timberman implemented a policy

7 directing that any new positions that were opened or created could not be filled

8 without posting such positions to enable all interested internal candidates to apply.

9 Ms. Timberman, however, did not hold herself to this policy.  Approximately one

10 month after Broadcom announced the MPS shut down, Ms. Timberman informed

11 the global HR group that she was once again going to reorganize her group.  As part

12 of this reorganization, Ms. Timberman created a new position for the former male

13 MPS head, who otherwise would have been laid off, which she did not post for other

14 prospective candidates.  Nor did Ms. Timberman invite Ms. Davies to apply for it.

15 To save another male employee's job, Ms. Timberman placed him in a position for

16 which he was not qualified and for which Broadcom had previously interviewed and

17 rejected qualified female candidates.

18     47.    In the end, a total of three employees in Ms. Timberman's group who

19 directly supported the MPS business were affected by the layoffs—all of whom

20 were female, including Ms. Davies.  On or about September 26, 2014, Broadcom

21 terminated Ms. Davies' employment.

22 **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

23     48.    On December 24, 2014, Ms. Davies filed a charge of discrimination

24 and retaliation with the California Department of Fair Employment and Housing.

25 Ms. Davies thereafter received a right to sue notice.  Ms. Davies has exhausted all

26 administrative remedies pursuant to Government Code section 12960.  Further, Ms.

27 Davies commenced this action in a timely fashion.  Attached hereto as Exhibit B,

28 and incorporated herein by this reference, are true and correct copies of the charge

1 | and right to sue notice.

2 | **FIRST CLAIM FOR RELIEF**

3 | **Violation of the Dodd-Frank Act, 15 U.S.C. § 78u-6**

4 |     49.   Ms. Davies hereby re-alleges and incorporates by reference, as though

5 | set forth in full herein, Paragraphs 1 through 48 above.

6 |     50.   Ms. Davies reasonably believed that ██████████████

7 | ████████████████████████████ Specifically, pursuant to

8 | her duties as Senior Director, Policy & Investigations, Ms. Davies uncovered

9 | ████████████████████████████████████

10 | ████████████████████████████████████

11 | █████████████. Further, Ms. Davies had reasonable cause to believe

12 | that ████████████████████████████████

13 | ██████  Ms. Davies reported the ████████████████

14 | ████████████████████████████████████

15 | ████████████████████████████████████

16 |     51.   Ms. Davies was a whistleblower as defined by the Dodd-Frank Act, 15

17 | U.S.C. § 78u-6(h)(1)(A)(iii) and 17 C.F.R. § 240.21F-2(b)(1), and was protected

18 | from retaliation for reporting such misconduct.  Broadcom, however, retaliated

19 | against Ms. Davies by, among other things: (1) denying her promotion to vice

20 | president, a position that had been promised to her and for which she was highly

21 | qualified; (2) denying Ms. Davies the same compensation afforded to those

22 | employees selected for promotion to vice president; (3) subjecting Ms. Davies to a

23 | hostile work environment; and (4) ultimately terminating Ms. Davies' employment.

24 |     52.   By reason of the foregoing, Broadcom's conduct constitutes retaliation

25 | in violation of the Dodd-Frank Act, 15 U.S.C. § 78u-6.

26 |     53.   Broadcom's retaliatory acts have caused damage and harm to Ms.

27 | Davies (including lost earnings, salary, bonuses, stock options and awards, and other

28 | job benefits), and have caused her to suffer humiliation, embarrassment, and

1  emotional distress, in an amount to be determined according to proof at trial.

2        54.     Broadcom is also liable for statutory damages pursuant to 15 U.S.C. §

3  78u-6(h)(1)(C).

4                        **SECOND CLAIM FOR RELIEF**

5     **Wage Discrimination, 29 U.S.C. § 206(d) & Labor Code § 1197.5**

6        55.     Ms. Davies hereby re-alleges and incorporates by reference, as though

7  set forth in full herein, Paragraphs 1 through 54 above.

8        56.     Broadcom discriminated against Ms. Davies in compensation on the

9  basis of her gender by repeatedly denying her promotion to vice president.  For

10  example, when Ms. Davies vacated her role as senior director of Broadcom's legal

11  group, she was replaced by a male, Mr. Daniels, who performed substantially equal

12  or lesser duties and work than Ms. Davies had when she had occupied the role.

13  Because Mr. Daniels was placed in the role as a vice president, however, he

14  received substantially higher compensation than Ms. Davies.  Specifically, as a vice

15  president, Mr. Daniels was eligible for more than three times the value of equity

16  than was Ms. Davies as a senior director.  Moreover, Mr. Daniels' target bonus was

17  50% of base salary, significantly more than Ms. Davies' 30% target bonus.  Ms.

18  Davies also is informed and believes that Mr. Daniels received a significantly higher

19  cliff vesting award than she did.

20        57.     Broadcom's decision to compensate Ms. Davies less than her male

21  counterparts was willful and the result of the Company's bias and explicit

22  preference for male employees.

23        58.     Broadcom's conduct constitutes wage discrimination in violation of the

24  federal and state Equal Pay Acts, 29 U.S.C. § 206(d) and California Labor Code §

25  1197.5.

26        59.     Broadcom's wage discrimination has caused damage and harm to Ms.

27  Davies (including lost earnings, salary, bonuses, stock options and awards, and other

28  job benefits), and has caused her to suffer humiliation, embarrassment, and

1    emotional distress, in an amount to be determined according to proof at trial.

2        60.    Broadcom is also liable for statutory damages pursuant to 29 U.S.C. §

3    216(b).

4                        **THIRD CLAIM FOR RELIEF**

5                    **Retaliation, 29 U.S.C. § 215(a)(3)**

6        61.    Ms. Davies hereby re-alleges and incorporates by reference, as though

7    set forth in full herein, Paragraphs 1 through 60 above.

8        62.    Ms. Davies verbally complained about Broadcom's gender-based wage

9    discrimination.  Specifically, after Mr. Daniels was hired in 2013, Ms. Davies

10   complained to Ms. Timberman that Mr. Daniels had been made vice president in the

11   employment law role even though Ms. Davies had not been afforded the same

12   opportunity, and had in fact been told that the position was not vice president-

13   eligible.  Ms. Davies again complained to Ms. Timberman in 2014 that Mr. Daniels

14   was receiving greater compensation for performing equal or lesser duties and work

15   than Ms. Davies had when she had occupied the role.  During the same time period,

16   Ms. Davies challenged Ms. Timberman's explicit resistance to complying with

17   Equal Pay Act.

18       63.    As a result of Ms. Davies' complaints regarding, and resistance to,

19   Broadcom's unlawful practices, Broadcom engaged in a course of retaliatory

20   conduct, which included, among other things: (1) denying her promotion to vice

21   president, a position that had been promised to her and for which she was highly

22   qualified; (2) denying Ms. Davies the same compensation afforded to those

23   employees selected for promotion to vice president; (3) subjecting Ms. Davies to a

24   hostile work environment; and (4) ultimately terminating Ms. Davies' employment.

25       64.    Broadcom's conduct constitutes retaliation in violation of the Fair

26   Labor Standards Act, 29 U.S.C. § 215, which makes it unlawful for an employer to

27   retaliate against an employee who complains about violations of the Fair Labor

28   Standards Act.

65.     Broadcom's retaliatory acts have caused damage and harm to Ms. Davies (including lost earnings, salary, bonuses, stock options and awards, and other job benefits), and have caused her to suffer humiliation, embarrassment, and emotional distress, in an amount to be determined according to proof at trial.

66.     Broadcom's acts alleged herein were undertaken with the intent to injure Ms. Davies, or with a willful and conscious disregard of her rights, and constitute oppressive, malicious, and fraudulent conduct.  As a result, Ms. Davies is entitled to an award of punitive and exemplary damages in an amount sufficient to punish Broadcom, and to make an example of and deter Broadcom from engaging in such conduct in the future.

67.     Broadcom is also liable for statutory damages pursuant to 29 U.S.C. § 216(b).

## FOURTH CLAIM FOR RELIEF
### Discrimination, Gov. Code § 12940(a)

68.     Ms. Davies hereby re-alleges and incorporates by reference, as though set forth in full herein, Paragraphs 1 through 67 above.

69.     Broadcom intentionally discriminated against Ms. Davies on the basis of her gender by the conduct specified above, which includes, among other things: (1) on multiple occasions, denying Ms. Davies' promotion to vice president, a position that had been promised to her and for which she was highly qualified, and instead providing the position to similarly situated or less qualified male employees; (2) denying Ms. Davies the same compensation afforded to similarly situated or less qualified male employees who were selected for promotion to vice president; (3) subjecting Ms. Davies to a hostile work environment by, for example, having her sashay for the entertainment of male employees and describing Ms. Davies as a "kitten[] with a ball of yarn"; (4) viewing her as having too many "female" characteristics; and (5) ultimately terminating Ms. Davies' employment.

70.     By reason of the foregoing, Broadcom discriminated against Ms.

1   Davies on the basis of gender, in violation of the California Fair Employment and

2   Housing Act (FEHA), Government Code §12940(a).

3       71.    Broadcom's discriminatory acts have caused damage and harm to Ms.

4   Davies (including lost earnings, salary, bonuses, stock options and awards, and other

5   job benefits), and have caused her to suffer humiliation, embarrassment, and

6   emotional distress, in an amount to be determined according to proof at trial.

7       72.    Broadcom's acts alleged herein were undertaken with the intent to

8   injure Ms. Davies, or with a willful and conscious disregard of her rights, and

9   constitute oppressive, malicious, and fraudulent conduct.  As a result, Ms. Davies is

10   entitled to an award of punitive and exemplary damages in an amount sufficient to

11   punish Broadcom, and to make an example of and deter Broadcom from engaging in

12   such conduct in the future.

13   **FIFTH CLAIM FOR RELIEF**

14   **Failure to Prevent Discrimination Gov. Code § 12940(k)**

15       73.    Ms. Davies hereby re-alleges and incorporates by reference, as though

16   set forth in full herein, Paragraphs 1 through 72 above.

17       74.    During the course of Ms. Davies' employment, Broadcom fostered an

18   environment that condoned discrimination against and harassment of Ms. Davies

19   and other women by, among other things, subjecting women to demeaning treatment

20   and a hostile environment, and favoring male employees in hiring, promotion, and

21   retention over similarly situated female employees.  For example, Broadcom

22   ████████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████████  Ms.

24   Davies herself was subjected to demeaning treatment by, among other things, being

25   required to sashay for the entertainment of male employees, being described by the

26   General Counsel as a "kitten[] with a ball of yarn."  Additionally, Ms. Davies was

27   subjected to hostile treatment by Ms. Timberman, who, among other things,

28   chastised Ms. Davies for complaining of the unfair treatment she had received,

1 | impeded Ms. Davies' ability to carry out her duty to investigate misconduct by male
2 | employees, told Ms. Davies that she was too vocal about her ambition, viewed Ms.
3 | Davies as having too many "female" characteristics (other than her career
4 | aspirations), and berated Ms. Davies for not maintaining a "poker face" after
5 | learning of her termination. Moreover, Broadcom took action in response to Ms.
6 | Davies' complaints that Ms. Timberman had instructed her to "hire a man" and that
7 | she was receiving unequal compensation on the basis of her gender.

8 | 75. Broadcom intentionally discriminated against Ms. Davies on the basis
9 | of her gender by the conduct specified above, which includes, among other things:
10 | (1) denying Ms. Davies' promotion to vice president, a position that had been
11 | promised to Ms. Davies and for which she was highly qualified, and instead
12 | providing the position to similarly situated or less qualified male employees; (2)
13 | denying Ms. Davies the same compensation afforded to similarly situated or less
14 | qualified male employees who were selected for promotion to vice president; (3)
15 | subjecting Ms. Davies to a hostile work environment; and (4) ultimately terminating
16 | Ms. Davies' employment.

17 | 76. Ms. Davies informed Broadcom of the above-described discriminatory
18 | conduct at the Company to which she had been subjected. Thus, Broadcom had
19 | actual or constructive knowledge of such conduct, yet failed to take any action in
20 | response. Instead, consistent with its practice of condoning discrimination against
21 | women, Broadcom retaliated against Ms. Davies for reporting such conduct.

22 | 77. Broadcom's failure to take all reasonable steps to prevent
23 | discrimination against Ms. Davies, and to take immediate and appropriate corrective
24 | action to remedy the discrimination constitutes a violation of FEHA, Government
25 | Code § 12940(k).

26 | 78. Broadcom's failure to protect Ms. Davies from discrimination has
27 | caused damage and harm to Ms. Davies (including lost earnings, salary, bonuses,
28 | stock options and awards, and other job benefits), and has caused her to suffer

1  humiliation, embarrassment, and emotional distress, in an amount to be determined

2  according to proof at trial.

3       79.    Broadcom's acts alleged herein were undertaken with the intent to

4  injure Ms. Davies, or with a willful and conscious disregard of her rights, and

5  constitute oppressive, malicious, and fraudulent conduct. As a result, Ms. Davies is

6  entitled to an award of punitive and exemplary damages in an amount sufficient to

7  punish Broadcom, and to make an example of and deter Broadcom from engaging in

8  such conduct in the future.

9  **SIXTH CLAIM FOR RELIEF**

10  **Retaliation, Gov. Code § 12940(h)**

11       80.    Ms. Davies hereby re-alleges and incorporates by reference, as though

12  set forth in full herein, Paragraphs 1 through 79 above.

13       81.    Ms. Davies opposed Broadcom's practice of discrimination by, among

14  other things: (1) admonishing management for requiring female employees to

15  sashay for the entertainment of male employees; (2) refusing to give preference to

16  male employees over more qualified female employees in hiring or promotion

17  decisions; and (3) complaining of Broadcom's hostility toward the Equal Pay Act.

18       82.    As a result of Ms. Davies' objections and assertions of her lawful

19  rights, Broadcom engaged in a course of retaliatory conduct, which included, among

20  other things: (1) denying Ms. Davies' promotion to vice president, a position that

21  had been promised to her and for which she was highly qualified; (2) denying Ms.

22  Davies the same compensation afforded to those employees selected for promotion

23  to vice president; and (3) ultimately terminating Ms. Davies' employment.

24       83.    Broadcom's conduct constitutes retaliation in violation of FEHA,

25  Government Code § 12940(h), which makes it unlawful for an employer to retaliate

26  against an employee who reports or otherwise opposes prohibited discrimination.

27       84.    Broadcom's retaliatory acts have caused damage and harm to Ms.

28  Davies (including lost earnings, salary, bonuses, stock options and awards, and other

1  job benefits), and have caused her to suffer humiliation, embarrassment, and
2  emotional distress, in an amount to be determined according to proof at trial.

3       85.    Broadcom's acts alleged herein were undertaken with the intent to
4  injure Ms. Davies, or with a willful and conscious disregard of her rights, and
5  constitute oppressive, malicious, and fraudulent conduct.  As a result, Ms. Davies is
6  entitled to an award of punitive and exemplary damages in an amount sufficient to
7  punish Broadcom, and to make an example of and deter Broadcom from engaging in
8  such conduct in the future.

9  **SEVENTH CLAIM FOR RELIEF**
10  **Retaliation, Labor Code § 1102.5**

11       86.    Ms. Davies hereby re-alleges and incorporates by reference, as though
12  set forth in full herein, Paragraphs 1 through 85 above.

13       87.    Ms. Davies, pursuant to her duties as Senior Director, Policy &
14  Investigations, uncovered ███████████████████████████ Further,
15  Ms. Davies had reasonable cause to believe that ██████████████████████
16  ████████████████████████████████████████
17  ██████████████████████ Ms. Davies reported the ████████████
18  ████████████████████████████████████████████
19  █████████████████████████████████████████████
20       88.    As a result of Ms. Davies' reporting of such ██████████████
21  conduct, Broadcom retaliated against her by, among other things: (1) denying Ms.
22  Davies' promotion to vice president, a position that had been promised to her and
23  for which she was highly qualified; (2) denying Ms. Davies the same compensation
24  afforded to those employees selected for promotion to vice president; (3) subjecting
25  Ms. Davies to a hostile work environment; and (4) ultimately terminating Ms.
26  Davies' employment.

27       89.    Broadcom's conduct constitutes retaliation in violation of Labor Code §
28  1102.5, which makes it unlawful for an employer to retaliate against an employee

1  for reporting violations of federal and state laws.

2       90.    Broadcom's retaliatory acts have caused damage and harm to Ms.

3  Davies (including lost earnings, salary, bonuses, stock options and awards, and other

4  job benefits), and have caused her to suffer humiliation, embarrassment, and

5  emotional distress, in an amount to be determined according to proof at trial.

6       91.    Broadcom's acts alleged herein were undertaken with the intent to

7  injure Ms. Davies, or with a willful and conscious disregard of her rights, and

8  constitute oppressive, malicious, and fraudulent conduct.  As a result, Ms. Davies is

9  entitled to an award of punitive and exemplary damages in an amount sufficient to

10  punish Broadcom, and to make an example of and deter Broadcom from engaging in

11  such conduct in the future.

12       92.    Broadcom is also subject to a statutory penalty pursuant to Labor Code

13  § 1102.5(f).

14                 **EIGHTH CLAIM FOR RELIEF**

15      **Wrongful Termination in Violation of Public Policy**

16       93.    Ms. Davies hereby re-alleges and incorporates by reference, as though

17  set forth in full herein, Paragraphs 1 through 92 above.

18       94.    Ms. Davies opposed Broadcom's practice of discrimination and

19  harassment by, among other things: (1) admonishing management for requiring

20  female employees to sashay for the entertainment of male employees, (2) refusing to

21  hire or promote male employees over more qualified female employees, and (3)

22  complaining of Broadcom's failure to comply with the Equal Pay Act.

23       95.    In addition, pursuant to her duties as Senior Director, Policy &

24  Investigations, Ms. Davies reported ███████████████████████

25  █████████████████████████████ and recommended that ███████████

26  ████████████████████████████████████████████

27  As a result of Ms. Davies' actions, Broadcom terminated her employment.

28       96.    The public has a fundamental interest in a workplace free from

1 | discrimination and retaliation, as embodied by the California Constitution, Article I,
2 | Section 8 and the Fair Labor Standards Act.

3 |     97.    The public also has a fundamental interest in ensuring that companies
4 | comply with federal securities laws, as embodied by the Dodd-Frank Act and the
5 | Sarbanes-Oxley Act of 2002.

6 |     98.    Broadcom's termination of Ms. Davies' employment constitutes
7 | wrongful conduct in violation of fundamental public policy.

8 |     99.    Broadcom's wrongful conduct in violation of fundamental public
9 | policy has caused damage and harm to Ms. Davies (including lost earnings, salary,
10 | bonuses, stock options and awards, and other job benefits), and has caused her to
11 | suffer humiliation, embarrassment, and emotional distress, in an amount to be
12 | determined according to proof at trial.

13 |     100.   Broadcom's acts alleged herein were undertaken with the intent to
14 | injure Ms. Davies, or with a willful and conscious disregard of her rights, and
15 | constitute oppressive, malicious, and fraudulent conduct.  As a result, Ms. Davies is
16 | entitled to an award of punitive and exemplary damages in an amount sufficient to
17 | punish Broadcom, and to make an example of and deter Broadcom from engaging in
18 | such conduct in the future.

19 | **NINTH CLAIM FOR RELIEF**
20 | **Fraud**

21 |     101.   Ms. Davies hereby re-alleges and incorporates by reference, as though
22 | set forth in full herein, Paragraphs 1 through 100 above.

23 |     102.   In or about 2012, Broadcom, through its Deputy General Counsel,
24 | represented to Ms. Davies that her position in the employment law section was not
25 | vice president-eligible.  During the same time period, Broadcom, through Ms.
26 | Timberman, represented to Ms. Davies that if she transferred to a corporate-level
27 | HR position, she would become vice president within two years.

28 |     103.   Broadcom's representations were false and known to be false, or made

with reckless disregard for the truth, at the time they were made.  In fact, the employment law position was vice president-eligible, as evidenced by Broadcom's hiring of Mr. Daniels as a vice president.  In addition, the HR position was not vice president-eligible.

104.   Ms. Davies was not aware of the falsity of Broadcom's representations. In reasonable reliance on Broadcom's false representations, Ms. Davies agreed to transfer from her employment law role to the HR role.

105.   Further, in or about March 2014, Broadcom, through Ms. Timberman, represented to Ms. Davies that by transferring to the MPS role she would be on a "fast track" to vice president and would become vice president within a year.

106.   Broadcom's representation was false and known to be false, or made with reckless disregard for the truth, at the time it was made.  In fact, Broadcom intentionally concealed from Ms. Davies that MPS soon would be shut down or sold and that Ms. Davies' position would be eliminated.

107.   Ms. Davies was not aware of the falsity of Broadcom's representation. In reasonable reliance on Broadcom's false representation, Ms. Davies agreed to transfer to the MPS role.

108.   Broadcom's fraud has caused damage and harm to Ms. Davies (including lost earnings, salary, bonuses, stock options and awards, and other job benefits), and has caused her to suffer humiliation, embarrassment, and emotional distress, in an amount to be determined according to proof at trial.

109.   Broadcom's acts alleged herein were undertaken with the intent to injure Ms. Davies, or with a willful and conscious disregard of her rights, and constitute oppressive, malicious, and fraudulent conduct.  As a result, Ms. Davies is entitled to an award of punitive and exemplary damages in an amount sufficient to punish Broadcom, and to make an example of and deter Broadcom from engaging in such conduct in the future.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TENTH CLAIM FOR RELIEF**

## **Negligent Misrepresentation**

110.   Ms. Davies hereby re-alleges and incorporates by reference, as though set forth in full herein, Paragraphs 1 through 109 above.

111.   In or about 2012, Broadcom, through Ms. Timberman, represented to Ms. Davies that the Policy and Investigations role in HR was vice-president eligible by stating that she would become vice president within two years of assuming the position.

112.   Broadcom's representation was false and was made without having any reasonable ground to believe it to be true at the time it was made.  In fact, in or about January 2014, Ms. Timberman informed Ms. Davies that the HR position was not vice president-eligible.

113.   Ms. Davies was not aware of the falsity of Broadcom's representation. In reasonable reliance on Broadcom's false representations, Ms. Davies agreed to transfer from her employment law role to the HR role.

114.   Further, in or about March 2014, Broadcom, through Ms. Timberman, represented to Ms. Davies that the MPS role was vice president-eligible by stating that if she transferred to the MPS role she would be on a "fast track" to vice president and would become vice president within a year.

115.   Broadcom's representation was false and was made without having any reasonable ground to believe it to be true at the time it was made.  In fact, Broadcom concealed from Ms. Davies that MPS soon would be shut down or sold and that Ms. Davies' position would be eliminated.

116.   Ms. Davies was not aware of the falsity of Broadcom's representation. In reasonable reliance on Broadcom's false representation, Ms. Davies agreed to transfer to the MPS role.

117.   Broadcom's negligent misrepresentations have caused damage and harm to Ms. Davies (including lost earnings, salary, bonuses, stock options and

1    awards, and other job benefits).

2                            **<u>PRAYERS FOR RELIEF</u>**

3           WHEREFORE, Ms. Davies requests and prays that the Court enter judgment

4    in her favor and against Broadcom for:

5           A.      General and special damages according to proof at trial, including,

6    without limitation, lost earnings, salary, bonuses, stock options and awards, and

7    other job benefits Ms. Davies would have received but for Broadcom's wrongful

8    conduct;

9           B.      Emotional distress damages;

10          C.      Punitive and exemplary damages in an amount sufficient to punish

11   Broadcom, and to make an example of and deter Broadcom from engaging in such

12   conduct in the future;

13          D.      Statutory damages and penalties as appropriate, including without

14   limitation, pursuant to 15 U.S.C. § 78u-6(h)(1)(C), 29 U.S.C. § 216(b), and Labor

15   Code § 1102.5(f).

16          E.      Reasonable attorneys' fees to the extent allowable by law;

17          F.      Costs of suit herein;

18          G.      Pre-judgment and post-judgment interest, as provided by law; and

19          H.      Such other and further relief as the Court may deem just and proper.

20   DATED:  June 11, 2015                GREENBERG GROSS LLP

21

22

23                                 By:        /s/ Alan A. Greenberg
                                         _____
24                                       Alan A. Greenberg
                                         Wayne R. Gross
25                                       Adrianne E. Marshack
                                         Leanna C. Costantini
26                                       Attorneys for Plaintiff
                                         JENNIFER DAVIES
27

28

                              COMPLAINT FOR DAMAGES

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2      Plaintiff Jennifer Davies hereby demands a jury trial.

3

4 DATED:  June 11, 2015      GREENBERG GROSS LLP

5

6

7           By:      /s/ Alan A. Greenberg

8                Alan A. Greenberg
               Wayne R. Gross

9                Adrianne E. Marshack
               Leanna C. Costantini

10                Attorneys for Plaintiff
               JENNIFER DAVIES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES