# EXHIBIT A



BROADCOM CORPORATION
16215 Alton Parkway
Irvine, California 92618

Phone: 949-450-8700
Fax: 949-450-8710

## STATEMENT REGARDING CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT

Attached to this statement is your Confidentiality and Invention Assignment Agreement ("Agreement") with Broadcom Corporation (the "Company").

Please take your time to review the Agreement carefully. The Agreement contains material restrictions on your right to disclose or use, both during and after your employment with Broadcom, third party confidential information learned or developed by you prior to your employment with Broadcom, as well as confidential information of Broadcom and others that you learn or develop during your employment with Broadcom, and (c) third party confidential information that you learn during your employment with Broadcom.

The Company considers this Agreement to be vitally important to the protection of its business. The Company intends to vigorously enforce the terms of the Agreement and to seek appropriate injunctions or restraining orders, as well as money damages, should you violate the Agreement. You are also subject to various disciplinary actions if you violate the Agreement, up to and including the termination of your employment with the Company.

If you have any questions concerning the Agreement, you may wish to consult an attorney. The employees and agents of the Company are not authorized to, and will not, give you legal advice concerning the Agreement.

***If you have read and understand the Agreement and if you agree to its terms and conditions please return a fully executed copy thereof to the Company, retaining one copy for yourself.***

Revised: March 13, 2006                    1

# CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT

This CONFIDENTIALITY AND INVENTION ASSIGNMENT AGREEMENT (this "**Agreement**") is entered into as of the date set forth below between Broadcom Corporation on behalf of itself and its subsidiaries and affiliates (the "**Company**") and the employee set forth below, ("**Employee**").

In consideration of Employee's employment by the Company and all forms of compensation paid to Employee, Employee hereby acknowledges and agrees with the Company as follows:

**Part 1. Effectiveness**

This Agreement is effective on the earlier of (1) the commencement of Employee's employment with the Company, or (2) the date and time at which any Confidential Information (as defined in Section 2.1 below) was or is first disclosed to Employee.

**Part 2. Protection of Confidential Information; Noncompetition**

**2.1 Confidential Information.** The Company has and will develop, compile, own, and have access to certain proprietary techniques and confidential information that have great value in its business (said techniques and information are referred to in this Agreement collectively as "**Confidential Information**"). The Company has access to Confidential Information of others, such as persons or entities for whom the Company provides products or services ("**Customers**"), from whom the Company acquires products or services ("**Company Vendors**"), or from whom the Company or Employee otherwise obtains information. "Confidential Information" includes not only information disclosed by the Company or others to Employee in the course of his or her employment, but also information developed or learned by Employee regarding the Company or others during the course of his or her employment with the Company, such as Inventions (as defined in Section 4.1 below). Confidential Information includes all information that has or could have commercial value or other utility in the business in which the Company or others are engaged or in which they contemplate engaging. Confidential Information also includes all information of which the unauthorized disclosure is or could be detrimental to the interests of the Company or others, whether or not such information is identified as Confidential Information by the Company or others. By example, and without limitations, Confidential Information may include information concerning or involving teaching techniques, processes, formulas, trade secrets, proprietary tools, inventions, discoveries, improvements, research or development and test results, specifications, designs, architectures, confidential data sheets, computer source and object code, technical product information, data, know-how, formats, marketing plans, product development, business plans, strategies, forecasts, unpublished financial information, budgets, projections, pricing and cost information, terms of agreements with third parties, personnel information (including information with regard to employee compensation and benefits, employee assignments and capabilities) and customer and supplier lists, identities, characteristics, preferences, bids, proposals, and agreements.

**2.2 Protection of Confidential Information.** Employee agrees that at all times during or after his or her employment, he or she will hold in trust and keep confidential the Confidential Information of the Company, Customers, Company Vendors or others. Employee agrees that he or she will not disclose to any third party or make use of the Confidential Information of the Company, Customers and Company Vendors for any purpose other than as authorized (*e.g.*, by an applicable non-disclosure agreement) to perform his or her obligations as an employee of the Company. In the event Employee believes that he or she needs to consult with his or her own attorney or other professional advisor relating to the Confidential Information of the Company, Customers or Company Vendors, Employee hereby agrees to seek written permission from the Corporate Compliance Officer of the Company *prior* to such consultation. Such permission may be contingent on attaining a signed confidentiality agreement from such attorney or professional advisor. In the event that Employee desires to publish the results of his or her work for the Company through literature or speeches, Employee agrees to submit such literature or speeches to the President, Chief Executive Officer or Chief Technical Officer of the Company (each an "**Authorized Officer**") at least ten (10) days before dissemination of such information. Employee agrees not to publish, disclose, or otherwise disseminate such information without prior written approval of an Authorized Officer. Employee acknowledges that he or she is aware that the unauthorized disclosure or use of Confidential Information of the Company, Customers, or Company Vendors may be highly prejudicial to the interests of the Company, an invasion of privacy, and an improper disclosure or use of trade secrets. Whenever the approval, designation, specification, or other act of an Authorized Officer is

required under this Agreement, the Authorized Officer may, by written designation, authorize an agent of the Company to perform such act.

**2.3   Noncompetition During Employment.** During the term of Employee's employment, Employee agrees to devote his or her full business energies and time exclusively to the Company's business. Except with the express prior written consent of the Corporate Compliance Officer of the Company,[1] Employee agrees that he or she will not, during the term of his or her employment with the Company: (a) engage in any employment or activity other than for the Company in any business in which the Company is engaged or contemplates engaging; (b) induce any other employee of or consultant of the Company to engage in any such employment or activity; (c) solicit any actual or potential Customers or Company Vendors for services similar to those performed by or on behalf of the Company, even if such services are not directly competitive with the Company's services; or (d) perform any work for, or provide any consultation to, any other company or entity without prior notice to, and approval of, the Company (as set forth in the Company's Conflicts of Interest Policy).

**Part 3.   Prior Inventions and Proprietary Information; Trade Secrets of Others**

**3.1   Prior Inventions.** Employee has also disclosed on Schedule A a complete list of all Inventions (as defined in Section 4.1) that are proprietary to Employee and which Employee wants to exclude from the application of this Agreement. The Company agrees to receive and hold all such disclosures in confidence.

**3.2   Prior Commitments.** Employee represents and warrants that he or she has no other agreements, relationships or commitments to any other person or entity, including any prior employer, that conflict with Employee's obligations to the Company under this Agreement or that conflict with Employee's ability to be employed by or perform services for the Company.

**3.3   Proprietary Information or Trade Secrets of Others.** Employee will not disclose to the Company, or use, or induce the Company to use, any proprietary information or trade secrets of others unless specifically authorized (*e.g.* pursuant to a non-disclosure agreement). Employee represents and warrants that he or she has returned all property and confidential or proprietary information belonging to all prior employers. By example, and without limitations, confidential or proprietary information may include non-public information concerning or involving teaching techniques, processes, formulas, trade secrets, proprietary tools, inventions, discoveries, improvements, research or development and test results, specifications, designs, architectures, confidential data sheets, computer source code, technical product information, data, know-how, formats, marketing plans, product development, business plans, strategies, forecasts, unpublished financial information, budgets, projections, pricing and cost information, terms of agreements with third parties, personnel information (including information with regard to employee compensation and benefits, employee assignments and capabilities) and customer and supplier lists, identities, characteristics, bids, proposals and agreements. If Employee has previously received or had access to any confidential or proprietary information belonging to any other person or entity, including any prior employer, Employee warrants and agrees that Employee will not use or disclose any such information for or on behalf of the Company, or in the course of performing Employee's duties for the Company. If during the course of his or her employment at the Company, Employee receives any confidential or proprietary information belonging to any other person or entity that Employee suspects the Company and/or Employee is not authorized to possess, Employee shall promptly notify the Company Legal Department or Corporate Compliance Officer. Employee agrees that if any job duty, task or requirement might risk the use or disclosure of any other person or entity's confidential or proprietary information, Employee shall promptly disclose this risk to the Company Legal Department or Corporate Compliance Officer so that appropriate actions may be taken to prevent any such use or disclosure.

**Part 4. Assignment of Employee Inventions**

**4.1   Disclosure.** Employee will promptly disclose in writing, to the Company, all discoveries, developments, designs, ideas, improvements, inventions, formulas, programs, devices, processes, techniques, know-how, data, computer programs and original materials, (whether or not patentable or registerable, under copyright or similar statutes) made, conceived, reduced to practice, or learned by Employee (either alone or jointly with others) during the period of his or her employment, that are related to or useful in the business of the Company, or which result from tasks assigned to Employee by the Company, or from the use of premises or equipment owned, leased, or otherwise provided or acquired by the Company (all of the foregoing are referred to in this Agreement as "**Inventions**"). As used herein, the term Inventions shall include, without limitation, all notes, records,

---

[1] Employees who are "officers" (as such term is defined in Rule 16a-1(f) of the Securities Exchange Act of 1934, as amended) must obtain such prior written consent from the Company's Board of Directors.

Revised: March 13, 2006    3

specifications, data, flow charts, documentation and other Confidential Information relating to the Inventions.

**4.2 Assignment of Inventions.** Employee acknowledges and agrees that all Inventions belong to and shall be the sole property of the Company and shall be Inventions of the Company subject to the provisions of this Agreement. Employee irrevocably assigns to the Company all right, title, and interest Employee may have or may acquire in and to all Inventions, including, without limitation, all copyright, trademark, trade secret, patent and mask work and other intellectual property rights throughout the universe. Employee acknowledges and agrees that no rights relating to any Invention are reserved to Employee. Employee agrees to sign and deliver to the Company (either during or subsequent to his or her employment) such other documents as the Company considers desirable to evidence or effect the assignment of all rights of Employee, if any, in any Inventions to the Company and the Company's ownership of such Inventions. Any provision in this Agreement requiring Employee to assign rights to an Invention does not apply to any Invention that qualifies under California Labor Code §2870 (or any other statute or common law principles of similar effect), which section is reproduced in the Written Notification to Employee attached to this Agreement as Schedule B.

**4.3 Power of Attorney.** In the event the Company is unable to secure Employee's signature on any document required by Company under Section 4.2 or any document necessary to apply for, establish, prosecute, obtain, or enforce any patent, copyright, or other right or protection relating to any Invention, whether due to mental or physical incapacity or other cause, Employee hereby irrevocably designates and appoints the Company and each of its duly authorized officers and agents as his or her agent and attorney-in-fact, to act for and in his or her behalf and stead to execute and file any such documents and to do all other lawfully permitted acts to further the prosecution, issuance, and enforcement of patents, copyrights, or other rights or protections with the same force and effect as if executed and delivered by the Employee.

**4.4 Cooperation.** Employee agrees to fully cooperate with the Company, including Company's outside patent counsel, in a timely manner, for example, by providing and discussing details of any Invention, reviewing corresponding draft patent applications, discussing potential revisions to such drafts, executing associated assignment agreements, powers of attorney, and declarations (or oaths), and/or providing witness testimony, as requested by Company and its Customers or Company Vendors. During and after termination of Employee's employment with the Company, Employee shall, upon the request of the Company, execute (1) any and all continuation, continuation-in-part, divisional, reexamination, and substitute applications for such Inventions, (2) any necessary oath, affidavit or declaration relating thereto, (3) any application for the reissue or extension of any patents that may be granted upon such Inventions, and (4) any and all applications and other documents for patents in foreign countries on such Inventions, that the Company may deem necessary or expedient. Employee authorizes the Company to apply for patents on such Inventions in its own name in such countries where such procedure is proper. Further, during and after termination of Employee's employment with the Company, Employee shall, upon the request of the Company, cooperate to the best of his or her ability with the Company, in any proceedings or transactions involving such applications or patents, including the preparation and execution of preliminary statements, giving and producing evidence, and performing any and all other acts necessary to obtain or enforce any patents resulting from such Inventions, both United States and foreign, and to vest all rights conveyed by this Agreement in the Company. This obligation to cooperate exists both during and after Employee's employment. In the event the time required of a former employee is more than de minimis, the Company will compensate Employee on an hourly basis at a rate determined by dividing Employee's final monthly salary by 173.

**4.5 Works Made For Hire.** Employee agrees that all original works of authorship made by Employee (either solely or jointly with others) that are protectable by copyright, whether registered or not, which are created during the period of employment with the Company shall be the sole and exclusive property of the Company, and that such works are "works made for hire" as that term is defined in the U.S. Copyright Act. To the extent that such works are not by law "works for hire," Employee hereby assigns and agrees to assign Employee's entire right, title, and interest in all copyrights in such works to the Company.

**4.6 Records.** Employee agrees to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that may be required by the Company) of all Confidential Information developed by Employee and all Inventions made by Employee during the period of his or her employment at the Company, which records shall be available to and remain the sole property of the Company.

**Part 5. Termination of Employment**

**5.1 Delivery of Documents and Data on Termination of Employment.** In the event of termination (voluntary or otherwise) of Employee's employment with the Company, Employee agrees, promptly and without request, to deliver to and inform the Company of all documents and data pertaining to his or her employment and all Confidential Information and Inventions of the Company or its Customers or Company Vendors, whether prepared by Employee or otherwise coming into his or her possession or control, and whether in written, electronic or other form. Employee also agrees to promptly sign and comply with the Termination Certification attached to this Agreement as Schedule C. Employee will not retain any written, electronic or other material containing any information concerning or disclosing any of the Confidential Information or Inventions of the Company or its Customers or Company Vendors. Employee recognizes that the unauthorized taking of any of the Company's trade secrets may be a federal crime under 18 U.S.C. § 1832 and punishable by imprisonment for a time of not more than ten years and by a fine of not more than $250,000. Employee further recognizes that any such unauthorized taking of any of the Company's trade secrets may also be a crime under California Penal Code §499(c) (or any other statute or common law principles of similar effect). Employee further recognizes that any such unauthorized taking of the Company's trade secrets could also result in civil liability under California's Uniform Trade Secrets Act (Civil Code §§3426-3426.1 (or any other statute or common law principles of similar effect)), and that willful misappropriation may result in an award against Employee for triple the amount of the Company's damages and the Company's attorneys' fees in collecting such damages.

**5.2 Obligations of Employee After Termination of Employment.**

**a. Protection of Confidential Information, including Trade Secrets.** In the event of termination (voluntary or otherwise) of Employee's employment with the Company, Employee agrees that he or she will protect the content and value of Confidential Information and Inventions of the Company and its Customers or Company Vendors and will prevent their misappropriation, disclosure or use. Employee will not disclose or use to his or her benefit (or the benefit of any third party), or to the detriment of the Company or its Customers or Company Vendors, any Confidential Information or Invention.

**b. No Solicitation of Employees or Consultants.** Employee agrees that for a period of twenty four (24) months immediately following the termination (voluntary or otherwise) of Employee's employment with the Company, Employee shall not, directly or indirectly, (1) solicit, or assist any other person or entity in the solicitation of, any employee or consultant of Company, (2) encourage any such employee or consultant to leave the employment of Company or to cease consulting for Company, or (3) have any involvement in the hiring of any such employee, or retaining of any such consultant, without Company's prior written consent; provided, however, that this limitation shall not apply with regard to the hiring or retaining of any individual who has not been employed by (or been a consultant to) Company for at least one year prior to any approach being made to such employee or consultant.

**c. No Solicitation of Customers or Company Vendors.** Employee further agrees that for a period of twelve (12) months immediately following termination (voluntary or otherwise) of Employee's employment with the Company, Employee shall not, directly or indirectly, (1) use any Confidential Information to solicit or divert from Company the business of any Customers or Company Vendors of the Company made known to Employee during his or her employment with the Company or (2) induce any of the Company's actual or potential Customers, Company Vendors, suppliers, agents or other persons or entities under contract or otherwise associated with, or doing business with, Company who are made known to Employee during his or her employment with the Company to cease doing business with the Company. Employee acknowledges that the purpose and term of this Section 5.2(c) are reasonable and necessary to protect the Company's Confidential Information.

**5.3 Non-disclosure in Subsequent Employment.** Employee acknowledges that the Company's business is highly innovative and competitive and that Confidential Information which Employee will come to possess during his or her employment will involve valuable and proprietary information, including information with regard to the products, product development and design, manufacturing, pricing and marketing strategy. Employee acknowledges that Employee's future employment in certain positions would jeopardize the security of this Confidential Information. Accordingly, Employee agrees that following the termination of his or her employment with the Company, Employee will not, directly or indirectly, engage in any business, or become an employee of, consult with, render services for, own, manage, control, participate in, or in any manner engage in any business where the performance of Employee's duties and/or the knowledge utilized would require Employee to use or disclose any of the Company's Confidential Information. Moreover, to the extent that any business of Employee, or any employment or consulting relationship may in any way jeopardize or risk the use or disclosure of the

Company's Confidential Information or may create the appearance of jeopardizing or risking the use or disclosure of Confidential Information, Employee agrees to immediately notify an Authorized Officer of the Company of any such risk so that the Company may take all appropriate action to prevent any such use or disclosure and so that Employee can cooperatively work with the Company to take all reasonable steps to prevent any unauthorized use or disclosure. Because of the international scope of the Company's markets, Employee and the Company agree that such limitations shall apply throughout the world.

**Part 6. Additional Provisions**

**6.1 Injunction Relief.** Employee acknowledges that it may be impossible to assess the damages caused by his or her breach of this Agreement or any of its terms. Employee also agrees that any threatened or actual breach of this Agreement or any of its terms will constitute immediate and irreparable injury to the Company and the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

**6.2 Attorneys' Fees.** If any action is necessary to enforce this Agreement, the prevailing party shall be entitled to recover its attorneys' fees.

**6.3 Understanding.** Employee acknowledges and agrees that the protections set forth in this Agreement are a material condition to his or her employment with and compensation by the Company.

**6.4 Amendment and Binding Effect.** This Agreement may not be amended except by an instrument in writing signed by both parties. This Agreement shall be binding on the heirs, executors, administrators, and other legal representatives and assigns of Employee, and is for the benefit of the Company and its successors and assigns.

**6.5 Governing Law.** This Agreement shall be governed by the laws of the State of California, provided however, if the laws of the state or country in which Employee is employed for Broadcom will permit more complete enforcement of this Agreement as written than those of the State of California, then this Agreement such be governed by the laws of such other state or country.

**6.6 Entire Understanding.** This Agreement expresses the entire understanding of the parties about the described subject matter.

**6.7 Providing Additional Information; Cooperation.** After an employee's separation, circumstances frequently arise that make it important for the Company to secure reliable additional information from one or more former employees. Accordingly, Employee agrees that in the event requested to do so, Employee will under oath, to the extent permitted by law, give a statement or deposition to the Company in response to any inquiries from the Company. Employee further agrees to do such other acts in support of Employee's inventorship as may be necessary in the opinion of the Company to obtain and maintain United States and/or foreign patents and/or copyrights and to vest the entire right and title thereto in the Company. These inquiries can either be made in writing, or at a deposition (a question and answer session in which an oath is administered to the person being inquired of), as determined in the discretion of the Company. The Company shall attempt to set forth such inquiries, or take such deposition, at a time and place that is consistent with Employee's other obligations, although some inconvenience may be involved. In the event the time required of a former employee is more than de minimis, the Company will compensate Employee on an hourly basis at a rate determined by dividing Employee's final monthly salary by 173. In such circumstances Employee hereby agrees that such compensation will constitute his or her sole compensation for such services.

**6.8 Cumulative Remedies.** Each and all of the several rights and remedies provided for in this Agreement shall be cumulative. No one right or remedy shall be exclusive of the others or of any right or remedy allowed in law or in equity. No waiver or indulgence by the Company of any failure by Employee to keep or perform any promise or condition of this Agreement shall be a waiver of any preceding or succeeding breach of the same or any promise or condition. No waiver by the Company or any right shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

**6.9 Severability.** If a court finds any provision of this Agreement invalid or unenforceable as applied to any circumstance, the remainder of this Agreement and the application of such provision to other persons or circumstances shall be interpreted to as best to effect the intent of the parties hereto. The parties further agree to replace any such void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the extent possible, the economic, business, and other purposes of the void or unenforceable provision.

**7.0 Employment at Will.** Employee acknowledges and agrees that his or her employment

and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of the Company or the Employee. Nothing contained in this Agreement shall limit or otherwise alter the at-will term of Employee's employment. This at-will term of employment may only be modified in writing, signed by an Authorized Officer.

CAUTION: THIS AGREEMENT AFFECTS YOUR RIGHTS TO INVENTIONS YOU MAKE DURING YOUR EMPLOYMENT AND RESTRICTS YOUR RIGHT TO DISCLOSE OR USE CONFIDENTIAL INFORMATION OF THE COMPANY AND THIRD PARTIES DURING AND SUBSEQUENT TO YOUR EMPLOYMENT.

EMPLOYEE HAS READ THIS AGREEMENT CAREFULLY AND UNDERSTANDS ITS TERMS. EMPLOYEE HAS COMPLETELY FILLED OUT SCHEDULE A TO THIS AGREEMENT AND HAS RECEIVED A COPY OF THE WRITTEN NOTIFICATION TO EMPLOYEE CONTAINING CALIFORNIA LABOR CODE §2870 (OR ANY OTHER STATUTE OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT).

Dated: 10/21/06

Address for Notifications:

_____
(Street Address)

_____
(City, State, Zip Code)

_Jennifer Ashley_
(Signature of Employee)

Jennifer Ashley
(Name of Employee)

## SCHEDULE A. EMPLOYEE STATEMENT

1. **Conflicting Relationships.** Except as set forth below, I acknowledge that I have no other current or prior agreements, relationships, or commitments that conflict with my relationship with the Company under my Confidentiality and Inventions Assignment Agreement (if none, so state). (specify agreements, relationships and/or commitments)

_____none_____

2. **Confidential Information of Others.** I warrant and represent that I have not disclosed, and will not disclose, any confidential or proprietary information of any other person or entity to the Company or any of its employees, agents, or others, nor will I use any confidential or proprietary information of any other person or entity in the performance of any services I provide to or on behalf of the Company, unless I am legally authorized to do so (*e.g.*, I am a party to a non-disclosure agreement that applies to such information).

Dated: 10/21/06

_____Jennifer Ashley_____
(Signature of Employee)

_____Jennifer Ashley_____
(Print Name of Employee)

## SCHEDULE B. WRITTEN NOTIFICATION TO EMPLOYEE

In accordance with California Labor Code §2872 (or any other statute or common law principles of similar effect), you are hereby notified that your Confidentiality and Inventions Assignment Agreement does not require you to assign the Company any Invention for which no equipment, supplies, facility or trade secret information of the Company was used and that was developed entirely on your own time, and does not relate to the business of the Company or to the Company's actual or demonstrably anticipated research or development, or does not result from any work performed by you for the Company.

Following is the text of California Labor Code §2870:

"(a) any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to the assigned under subdivision (a), the provision is against the public policy of its state and is unenforceable."

I hereby acknowledge receipt of this written notification.

Dated: 10/21/06

*Jennifer Ashley*
(Signature of Employee)

*Jennifer Ashley*
(Print Name of Employee)

Revised: March 13, 2006

10