ALAN A. GREENBERG, State Bar No. 150827
  *AGreenberg@GGTrialLaw.com*
WAYNE R. GROSS, State Bar No. 138828
  *WGross@GGTrialLaw.com*
ADRIANNE E. MARSHACK, State Bar No. 253682
  *AMarshack@GGTrialLaw.com*
LEANNA COSTANTINI, State Bar No. 294028
  *LCostantini@GGTrialLaw.com*
GREENBERG GROSS LLP
650 Town Center Drive, Suite 1750
Costa Mesa, California 92626
Telephone: (949) 383-2800
Facsimile: (949) 383-2801

Attorneys for Plaintiff Jennifer Davies

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER DAVIES, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>BROADCOM CORPORATION, a California corporation,<br><br>       Defendant. | Case No. SACV15-928 AG (JCx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO ALLOW FILING OF UNREDACTED COMPLAINT**<br><br>[Filed Concurrently with Declaration of Jennifer Davies; and Declaration of Wayne R. Gross]<br><br>Judge:  Hon. Andrew J. Guilford<br>Date:    July 20, 2015<br>Time:   10:00 a.m.]<br>Crtrm.: 10D |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on July 20, 2015 at 10:00 a.m. in Courtroom 10D of the above-titled court, located at 411 West Fourth Street, Santa Ana, CA 92701, before the Honorable Andrew J. Guilford, Plaintiff Jennifer Davies will and hereby does move the Court for an order determining that the information redacted in the Complaint does not warrant sealing, and allowing Plaintiff Jennifer Davies to file an unredacted version of the Complaint.  This motion is made on the grounds that there are no compelling reasons to keep portions of the Complaint under seal.

This Motion is made following extensive conferences of counsel over several months, culminating the day before the Complaint was filed on June 11, 2015.  For example, the parties exchanged written communications regarding their respective positions on the propriety of sealing such information, including on April 10, 23, and 29, 2015.  On June 9 and 10, just days before the Complaint was filed, the parties' counsel further discussed the redactions in the Complaint.  Despite these extensive meet and confer efforts, which satisfy the meet and confer requirements of Local Rule 7-3, counsel were unable to reach a resolution other than an agreement that Ms. Davies would temporarily redact portions of the publicly filed complaint and seek judicial review through this Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    This Motion is based on this Notice of Motion and Motion; the accompanying

2   Memorandum of Points and Authorities and declarations of Jennifer Davies and

3   Wayne R. Gross and the Exhibit attached thereto; the pleadings and papers filed in

4   this action; and any such further argument and matters as may be offered at the time

5   of the hearing of this Motion.

6

7   DATED:  June 22, 2015              GREENBERG GROSS LLP

8

9

10                                          By:  _____/s/ Adrianne E. Marshack_____

11                                               Alan A. Greenberg
                                               Wayne R. Gross
12                                               Adrianne E. Marshack
                                               Leanna Costantini
13                                               Attorneys for Plaintiff Jennifer Davies

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND ..................................................................2

     A.      Ms. Davies' Non-Legal Employment at Broadcom ....................2

     B.      The Allegations in the Complaint................................................3

          1.  Whistleblower Claims. ..........................................................3

          2.  Gender Discrimination Claims. ...........................................14

     C.      Broadcom's Assertion of Privilege and Confidentiality .............5

III.    LEGAL STANDARD..............................................................................7

IV.     THERE IS NO COMPELLING REASON TO SEAL THE
       COMPLAINT ..........................................................................................8

     A.      The CIAA Does Not Compel a Sealing of the Complaint. ..........8

     B.      The Complaint Reveals No Privileged Information. ................121

     1.      The Attorney-Client Privilege Does Not Attach to the
          Allegations in the Complaint. .......................................................12

     2.      The Attorney Work-Product Doctrine is Not Applicable to
          the Allegations in the Complaint. ..................................................14

V.      CONCLUSION .....................................................................................16

PLAINTIFF'S MOTION TO ALLOW FILING OF UNREDACTED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*2,022 Ranch L.L.C. v. Superior Court*,
    113 Cal. App. 4th 1377 (2003) ........................................................................ 13

*Basaraba v. Greenberg*,
    No. CV 13-5061 PSG, 2013 WL 4517892 (C.D. Cal. Aug. 26, 2013) ...... 8, 9, 11

*Bolla v. Univ. of Hawaii*,
    No. CIV. 09-00165SOM/LEK, 2010 WL 5388008
    (D. Haw. Dec. 16, 2010) ................................................................................. 10

*Brown & Williamson Tobacco Corp. v. F.T.C.*,
    710 F. 2d 1165 (6th Cir. 1983) .............................................................. 8, 9, 10

*Costco Wholesale Corp. v. Superior Court*,
    47 Cal. 4th 725 (2009) ................................................................................... 13

*Dombrowski v. Bell Atl. Corp.*,
    128 F. Supp. 2d 216 (E.D. Pa. 2000) ............................................................. 15

*In re Electronic Arts, Inc.*,
    298 Fed. App'x 568 (9th Cir. 2008) ........................................................... 9, 11

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
    307 F. 3d 1206 (9th Cir. 2002) ........................................................................ 7

*Flex Frac Logistics, L.L.C. v. N.L.R.B.*,
    746 F. 3d 205 (5th Cir. 2014) ........................................................................ 11

*United States ex rel. Goodstein v. McLaren Reg'l Med. Ctr.*,
    No. 92-CV-72992-DT, 2001 WL 34091259 (E.D. Mich. 2001) ...................... 14

*Kamakana v. City and Cnty. of Honolulu*,
    447 F. 3d 1172 (9th Cir. 2006) ................................................................ 7, 8, 10

*Koumoulis v. Independent Financial Marketing Group, Inc.*,
    --- F.R.D. ----, 2013 WL 5934032 (E.D.N.Y. 2013) ................................. 13, 14

*In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*,
    686 F. 3d 1115 (9th Cir. 2012) ................................................................... 8, 11

*Montebello Rose Co. v. Agricultural Labor Relations Bd.*,
   119 Cal. App. 3d 1 (1981) .................................................................................. 13

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ........................................................................................... 7

*Nucal Foods, Inc. v. Quality Egg LLC*,
   CIV S-10-3105 ............................................................................................... 8, 9

*Oracle America, Inc. v. Google, Inc.*,
   No. C-10-03561-WHA (DMR), 2011 WL 3794892 (N.D. Cal. Aug. 26, 2011)12

*Pintos v. Pac. Creditors Ass'n*,
   605 F. 3d 665 (9th Cir. 2010) ......................................................................... 7, 8

*Ramsey v. NYP Holdings, Inc.*,
   No. 00 Civ.3478(VM)(MHD), 2002 WL 1402055 (S.D.N.Y. June 26, 2002)..15

*Select Portfolio Servicing v. Valentino*,
   C 12-0334 SI, 2013 WL 1800039 (N.D. Cal. Apr. 29, 2013)............................7

*United States v. Adlman*,
   134 F. 3d 1194 (2d Cir. 1998) ........................................................................ 15

*United States v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2011)....................................................... 12, 13

*United States v. ISS Marine Servs. Inc.*,
   905 F. Supp. 2d 121 (D.D.C. 2012) ............................................................... 14

*United States v. Ruehle*,
   583 F. 3d 600 (9th Cir. 2009) ........................................................................ 12

*Vallabharpurapu v. Burger King Corp.*,
   276 F.R.D. 611 (N.D. Cal. 2011) ................................................................... 15

*Wilcox v. Arpaio*,
   753 F. 3d 872 (9th Cir. 2014) ........................................................................ 12

*Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*,
   671 F. 2d 100,103 (3rd Cir. 1982)................................................................. 12

**Statutes**

29 U.S.C. § 215(a)(3) ........................................................................................ 4

Cal. Gov't Code § 12940 ................................................................................. 4

Cal. Lab. Code § 1102.5 ................................................................................. 3

Cal. Gov't Code § 12940(h) ............................................................................ 4

Fed. R. Civ. P. § 26(b)(3) .......................................................................... 14, 15

Fed. R. of Evid. § 501 ................................................................................... 12

1               **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3       Plaintiff Jennifer Davies filed the instant action after being subjected to

4 unlawful retaliation and discrimination by Defendant Broadcom Corporation

5 ("Broadcom" or the "Company").  In an attempt to chill Ms. Davies' pursuit of her

6 rights and protect itself from public scrutiny that would likely result, Broadcom

7 asserted that, prior to Ms. Davies' filing the Complaint, substantial portions of it

8 were either confidential and could not be disclosed pursuant to a boilerplate

9 Confidentiality and Invention Assignment Agreement ("CIAA") or protected by the

10 attorney-client privilege or work-product doctrine.[1]  Further, Broadcom threatened

11 to seek sanctions if Ms. Davies did not omit such information from the publicly filed

12 Complaint.

13       Although Ms. Davies opposed Broadcom's views, through an extensive meet

14 and confer process between counsel over several months, she ultimately agreed to

15 redact certain portions of the Complaint in order to preserve Broadcom's

16 opportunity to seek judicial resolution of the issue.  Accordingly, Ms. Davies now

17 moves the Court to have the unredacted Complaint filed in the public record and

18 deemed the operative complaint.

19       As the Court is aware, requests to seal interfere with the public's right to

20 inspect and copy public records and documents.  Accordingly, Broadcom carries a

21 heavy burden to demonstrate "compelling reasons" why portions of the Complaint

22 should be kept under seal.  Broadcom's proffered reasons to seal the redacted

23 portions of the Complaint, however, are without merit and fail to provide a

24 compelling reason to limit public access.

25 —————————————

26     [1] A copy of the unredacted complaint is attached as Exhibit A to the declaration of Wayne Gross filed conditionally under seal, concurrently herewith.

27 The portions of the Complaint to which Broadcom objects have been highlighted for

28 the Court's convenience.

1    Contrary to Broadcom's contention, the Complaint does not include

2  information that is confidential under the CIAA.  Moreover, the CIAA does not

3  amount to a "compelling reason" to keep the redacted information from the public

4  record.  There is no attorney-client privilege applicable to any of the information

5  Broadcom seeks to shield from public view because Ms. Davies did not learn such

6  information in her capacity as a lawyer for Broadcom.  Finally, the attorney work-

7  product doctrine does not protect any information in the Complaint from public

8  disclosure because the investigations upon which the information is based were not

9  conducted in anticipation of litigation and were not conducted at the direction of

10  counsel, nor is the information sought in the context of discovery (where the

11  doctrine applies).

12    In sum, Broadcom has no basis for causing any portion of the Complaint to be

13  sealed.  Accordingly, Ms. Davies respectfully requests that the Court permit Ms.

14  Davies to file her Complaint unredacted.

15  **II.    FACTUAL BACKGROUND**

16      **A.    Ms. Davies' Non-Legal Employment at Broadcom**

17    Ms. Davies began working at Broadcom in 2006 as the Company's first labor

18  and employment lawyer.  (Declaration of Jennifer Davies ("Davies Decl.") ¶ 2.)

19  She worked as an in-house lawyer for Broadcom until May 2012, when she

20  transferred to Human Resources in the position of Senior Director, Policy and

21  Investigations.  (*Id.* ¶¶ 2-3.)  Ms. Davies continued to work in the HR department

22  until Broadcom terminated her employment in September 2014.  (*Id.* ¶ 5.)

23    In the Policy and Investigations role in HR, Ms. Davies was responsible for

24  conducting fact-finding investigations.  (*Id.* ¶ 7.)  Although Ms. Davies maintained

25  active bar membership while working in the HR department, she was no longer an

26  attorney for Broadcom once she vacated her role in the Company's legal group.  (*Id.*

27  ¶ 6.)  In HR, Ms. Davies reported directly to a non-attorney, Terri Timberman,

28  Broadcom's then Vice President of HR.

1    In her HR role, Ms. Davies did not provide legal advice to the Company.

2  (*Id.*)  In fact, while in her HR role, Ms. Davies was told by Ms. Timberman and Ms.

3  Davies' former supervisors in the legal department, DeAnn Work and Arthur

4  Chong, that she was not authorized to have privileged communications on behalf of

5  the Company.  (*Id.*)  While in her HR role, Ms. Davies was also regularly precluded

6  from participating in communications with Broadcom's outside counsel, because

7  Ms. Davies' presence would destroy the attorney-client privilege.  (*Id.*)

8    **B.    The Allegations in the Complaint**

9    Ms. Davies initiated the instant action after her employment was unlawfully

10  terminated by Broadcom.  The Complaint alleges three primary areas of Broadcom's

11  wrongdoing—gender discrimination, fraud, and retaliation against Ms. Davies for

12  engaging in protected activity.[2]

13    **1.    Whistleblower Claims**

14    Ms. Davies asserts causes of action for retaliation in violation of the Dodd-

15  Frank Wall Street Reform and Consumer Protection Act, 15 U.S.C. section 78u-6,

16  California Labor Code section 1102.5, and wrongful termination in violation of

17  public policy.  (Declaration of Wayne R. Gross ("Gross Decl.") ¶ 7, Ex. A ¶¶ 49-54,

18  86-100.)

19    The foundation for Ms. Davies' retaliation and wrongful termination claims is

20  an investigation she conducted of a male Broadcom executive in her non-legal HR

21  Policy and Investigations role.  (Davies Decl. ¶ 8; Gross Decl., Ex. A ¶¶ 49-54, 86-

22  100.)  After concluding, as part of her investigation, that the male executive had

23  engaged in wrongdoing, including possibly violating federal statutes, Ms. Davies

24  made certain recommendations about further actions Broadcom should take,

25  including discipline of the male executive.  (Gross Decl., Ex. A ¶¶ 31-36.)

26 

27    [2] The factual allegations forming the basis for Ms. Davies' fraud claims are
   not at issue in the instant Motion, and therefore, will not be described in detail
28  herein.

1    However, Ms. Davies' recommendations were met with hostility and were

2    flatly rejected by Broadcom.  Far from being disciplined, the male executive

3    received nothing more than the proverbial "slap on the wrist."  (*Id.* ¶ 35.)  Further,

4    Broadcom refused to allow Ms. Davies or anyone else to conduct the recommended

5    further investigations.  (*Id.* ¶ 37.)  Instead, Broadcom, hostile to Ms. Davies'

6    conclusions and recommendations relating to the male executive, refused to promote

7    Ms. Davies to vice president and ultimately terminated her employment.  (*Id.* ¶¶ 27-

8    28, 38-47.)

9    Generalized facts relating to Ms. Davies' investigation of the male executive,

10   without any identifying information, or characterization of those facts, are set forth

11   in the Complaint in paragraphs 10, 13, 30-38, 50, 87-88, 95.  (*See* Gross Decl., Ex.

12   A.)  Broadcom, attempting to hide the alleged wrongdoing, demanded that these

13   paragraphs be redacted when the Complaint was filed.

### 2.    Gender Discrimination Claims

15   Ms. Davies also asserts causes of action for gender discrimination, in

16   violation of the Equal Pay Act, 29 U.S.C. section 215(a)(3), and FEHA, California

17   Government Code section 12940 and retaliation for opposing Broadcom's

18   discriminatory practices, under the Fair Labor Standards Act, 29 U.S.C. section

19   215(a)(3) and Government Code section 12940(h).  (*Id.*, Ex. A ¶¶ 49-54, 86-100.)

20   Ms. Davies' discrimination claims include Broadcom's favorable treatment of

21   Ms. Davies' male successor in her legal role (*see id.* ¶ 25), and various examples of

22   Broadcom's favorable treatment of male executives.  Such favorable treatment

23   included "business activities" that were unmistakable exercises in the objectification

24   and degradation of women included activities that objectified and degraded women,

25   which Broadcom tolerated and paid for without consequence to the male executives.

26   (*See id.* ¶¶ 18-19, 74).  Broadcom seeks to preclude Ms. Davies from introducing

27   necessary factual underpinnings supporting her claims in order to hide the reality of

28   its discrimination from the public. (Gross Decl. ¶¶ 3-4.)

1    Perhaps most indicative of the overbreadth of Broadcom's claims of

2 confidentiality, it seeks to preclude Ms. Davies from including in her Complaint the

3 percentage of women in Broadcom's workforce.  (*See id.*, Ex. A ¶ 5.)

4    **C.    Broadcom's Assertion of Privilege and Confidentiality**

5    Before filing the instant action, counsel for Ms. Davies provided counsel for

6 Broadcom a draft of the Complaint.  (Gross Decl. ¶ 2.)  In response, Broadcom's

7 counsel objected to substantial portions of the Complaint as disclosing purportedly

8 privileged attorney-client communications, attorney work-product, and confidential

9 information.[3]  (*Id.* ¶¶ 2-4.)  Broadcom requested that Ms. Davies file the entire

10 Complaint under seal, and threatened to seek sanctions if she failed to do so.  (*Id.* ¶

11 3.)  Although Ms. Davies opposed Broadcom's position, she agreed to redact

12 portions of the Complaint and seek judicial review of the issue.  (Gross Decl. ¶ 5-6.)

13    According to Broadcom, all of the allegations that form the basis of the

14 whistleblower claims are privileged from disclosure as attorney-client

15 communications and work-product, even though Ms. Davies did not conduct the

16 investigations or make recommendations in her capacity as a lawyer for the

17 company.  (*Id.*, Ex. A ¶¶ 10, 13, 30-38, 50, 87-88, 95.)  Apparently acknowledging

18 this fact, Broadcom claims that Ms. Davies' independent knowledge of the

19 information she learned from these investigations is privileged because the

20 investigations were purportedly conducted at the behest of counsel.  (*See* Gross

21 Decl. ¶ 2.)

22    Broadcom's remaining objections to public disclosure of certain information

23 in the Complaint have been based solely upon Broadcom's standard CIAA, which

24 _____

25    [3] In addition to portions of the complaint, Broadcom objected to the public
filing of portions of the DFEH charge that Ms. Davies attached as an exhibit to the
26 Complaint.  (*See* Gross Decl., Ex. A at 46-47.)  Because the specific allegations in
the DFEH charge are the same as those in the Complaint, Broadcom's objections the
27 portions of the DFEH charge mirror those described herein regarding the Complaint.

28

Ms. Davies signed when she began her employment at Broadcom.  The CIAA

defines "Confidential Information" as follows: "[P]roprietary techniques and

confidential information that have great value in its business (said techniques and

information are referred to in this Agreement collectively as "Confidential

Information")."  (Compl., Ex. A at 33, Part 2.1.)  The CIAA also includes broad,

catchall language, which Broadcom now claims precludes Ms. Davies from

disclosing any potentially disparaging information about the Company:

> Confidential information also includes all information of
> which the unauthorized disclosure is or could be detrimental
> to the interests of the Company or others, whether or not
> such information is identified as Confidential Information by
> the Company or others.   By example, and without
> limitations,  Confidential  Information  may  include
> information concerning or involving . . . personnel
> information (including information with regard to employee
> compensation  and  benefits,  employee  assignments  and
> capabilities) . . . .

(*Id.*)

Broadcom has claimed that, under a broad reading of the CIAA, Ms. Davies

is prohibited from alleging the following information in the Complaint: (1) the

percentage of male employees at Broadcom (*see* Gross Decl., Ex. A ¶ 5); (2)

Broadcom's tolerance of "business activities" and conduct by its male employees

that objectifies and degrades women and violates the company's purported "zero

tolerance" policy (*see id.* ¶¶ 10, 18-19, 74); and (3) information regarding Ms.

Davies' successor in her legal job at the Company was less efficient than Ms.

Davies and cost the company that bears on the issue of whether a male was treated

more favorably than a female (*see id.* ¶ 25).  Such allegations, according to

Broadcom, "relate to personnel decisions, an employee's performance, and private

1  company data," and thus are covered by the CIAA.

2       Finally, Broadcom has made the sweeping claim that all of the information it

3  objected to "could be detrimental to the interests of the Company," and thus was

4  protected from disclosure under the CIAA.  (*See* Compl., Ex. A at 33, Part 2.1.)

## III.  <u>LEGAL STANDARD</u>

6       The courts in this country recognize a "general right to inspect and copy

7  public records and documents, including judicial records and documents."  *Nixon v.*

8  *Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  Indeed, unless a court record

9  falls within the limited category of records "traditionally kept secret," a "strong

10  presumption in favor of access is the starting point."  *Kamakana v. City and Cnty. of*

11  *Honolulu*, 447 F. 3d 1172, 1178 (9th Cir. 2006).

12       With this presumption in mind, courts apply two different standards that a

13  party in favor of sealing a court record must satisfy.  The first is the "compelling

14  reasons" standard, under which the party seeking to seal the document must

15  demonstrate "compelling reasons supported by specific factual findings that

16  outweigh the general history of access and the public policies favoring disclosure."

17  *Id.* at 1178-79 (internal quotation marks and citations omitted).  The second is the

18  lower "good cause," which requires a showing that specific prejudice or harm will

19  result if the records are not sealed.  *See Phillips ex rel. Estates of Byrd v. Gen.*

20  *Motors Corp.*, 307 F. 3d 1206, 1210-11 (9th Cir. 2002).

21       In general, the "compelling reasons" standard applies to documents attached

22  to dispositive motions, while the "good cause" standard applies to documents

23  attached to non-dispositive motions.  *See Pintos v. Pac. Creditors Ass'n*, 605 F. 3d

24  665, 678 (9th Cir. 2010); *Select Portfolio Servicing v. Valentino*, C 12-0334 SI,

25  2013 WL 1800039 at *2 (N.D. Cal. Apr. 29, 2013).  The rationale behind applying

26  the lower "good cause" standard is that there is a "weaker public interest in non-

27  dispositive materials" because they are "often unrelated, or only tangentially related

28  to the underlying cause of action."  *Pintos*, 605 F. 3d at 678 (internal quotation

marks omitted).  In contrast to a non-dispositive motion, however, there is a strong public interest in open access to a complaint.  Indeed, a complaint is "the root, the foundation, the basis by which a suit arises and must be disposed of."  *McCrary v. Elations Co., LLC*, EDCV 13-00242 JGB, 2014 WL 1779243, *6 (C.D. Cal. Jan. 13, 2014) (internal quotation marks omitted).  Accordingly, courts faced with the question of whether a complaint should be filed under seal have uniformly held that a party requesting to seal all or part of a complaint must show a "compelling reason" to do so.  *See id.*; *Basaraba v. Greenberg*, No. CV 13-5061 PSG (SHx), 2013 WL 4517892, *2 (C.D. Cal. Aug. 26, 2013); *Nucal Foods, Inc. v. Quality Egg LLC*, CIV S-10-3105 KJM-CKD, 2012 WL 260078, *2 (E.D. Cal. Jan. 27, 2012).

Here, Broadcom contends that, despite the strong presumption in favor of public access to court records, portions of the Complaint should be kept out of the public record.  As such, Broadcom must demonstrate "compelling reasons" to keep portions of the complaint redacted.  *McCrary*, 2014 WL 1779243, *6.  As set forth below, Broadcom cannot satisfy its heavy burden.

## IV.   THERE IS NO COMPELLING REASON TO SEAL THE COMPLAINT

### A.   The CIAA Does Not Compel a Sealing of the Complaint.

To overcome the strong presumption in favor of access to court records, "[s]imply showing that the information would harm the company's reputation is not sufficient."  *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F. 2d 1165, 1179 (6th Cir. 1983).  Moreover, "[t]he mere fact that the [public disclosure of such information] may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  *Kamakana*, 447 F. 3d at 1179.  Rather, a "compelling reason" to seal a court record exists when "court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements or release trade secrets."  *In re Midland Nat. Life Ins. Co. Annuity Sales*

1  *Practices Litig.*, 686 F. 3d 1115, 1120 (9th Cir. 2012) (internal citations and

2  quotation marks omitted); *see also In re Electronic Arts, Inc.*, 298 Fed. App'x 568,

3  569-70 (9th Cir. 2008) (adopting, for purposes of sealing, the Restatement's

4  definition of "trade secret" as " any formula, pattern, device or compilation of

5  information which is used in one's business, and which gives him an opportunity to

6  obtain an advantage over competitors who do not know or use it").

7        Further, confidentiality agreements do not, in and of themselves, amount to a

8  "compelling reason" to deny public access to court records.  *See Basaraba*, 2013

9  WL 4517892 at *3 (finding that confidentiality agreement between a company and

10  its shareholder was insufficient to keep complaint under seal); *McCrary*, 2014 WL

11  1779243 at *6 (finding that stipulated protective order insufficient to keep complaint

12  under seal); *Brown & Williamson Tobacco*, 710 F. 2d at 1180 (reversing district

13  court's order placing case documents under seal and holding that a confidentiality

14  agreement between cigarette companies and the FTC "d[id] not bind the court in any

15  way").  As one court observed, a mere agreement between the parties may not even

16  satisfy the lower "good cause" standard: "If the Court were to allow this agreement

17  to control this case, any parties in any case could by agreement stipulate to litigate

18  their entire case under seal."  *Nucal Foods Inc.*, 2012 WL 260078 at *2.  Even

19  where information in a court record pertains to "private and confidential business

20  matters" protected by a confidentiality agreement, courts have declined to allow

21  sealing, absent a showing that they could "become a vehicle for improper purposes"

22  or "release trade secrets."  *Basaraba*, 2013 WL 4517892, *3.

23        Broadcom claims that certain information related to Broadcom's

24  discriminatory practices in disciplining and compensating male employees, as well

25  as the circumstances leading up to Ms. Davies' termination, is confidential under the

26  CIAA.  Thus, according to Broadcom, Ms. Davies is precluded from including such

27  information in the publicly filed Complaint.

28        Unable to demonstrate that the allegations in the Complaint relate to "certain

proprietary techniques and confidential information that have great value in [Broadcom's] business," Broadcom relies upon the catchall language of the CIAA, contending that such information "could be detrimental to the interests of the Company." (*See* Compl., Ex. A at 33, Part 2.1.) Adopting Broadcom's interpretation of the CIAA, however, would preclude any employee from ever making any employment-related claims against Broadcom. The law does not allow an employer to silence its employees. *See Kamakana*, 447 F. 3d at 1179. ("The mere fact that the [public disclosure of such information] may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."); *Brown & Williamson Tobacco*, 710 F. 2d at 1180 ("Simply showing that the information would harm the company's reputation is not sufficient.")[4]

Broadcom further contends that information regarding Broadcom's discriminatory practices in disciplining male employees constitutes "third-party personnel information and personnel decisions" protected under the CIAA. (*See* Compl., Ex. A at 33, Part 2.1.) However, the Complaint does not disclose any personal identifying information, including the names and job titles, of employees alleged to have engaged in misconduct without being subject to meaningful discipline. (*See* Gross Decl., Ex. A ¶¶ 18-19, 31-37.) The Complaint, therefore, does not improperly disclose sensitive third-party personnel information. *See Bolla v. Univ. of Hawaii*, No. CIV. 09-00165 SOM/LEK, 2010 WL 5388008, *1 (D. Haw.

---

[4] It is also worth noting that Broadcom's broad interpretation of "Confidential Information," coupled with the CIAA's prohibition on disclosure of such information to anyone, including an employee's own attorney (*see* Compl., Ex. A at 33, Part 2.2), would render the CIAA illegal under the Dodd-Frank Wall Street Reform and Consumer Protection Act. *See KBR, Inc.*, Exchange Release No. 74619 (Apr. 1, 2015) (finding that confidentiality agreement requiring prior authorization for employees to discuss internal investigations "undermines the purpose of Section 21F and Rule 21F-17(a)").

Dec. 16, 2010) (finding that redactions of names of third-party student-athletes and coaches sufficiently "maintain[ed] those individuals' rights to medical privacy and spare[d] those individuals from the public embarrassment of being the alleged victims of [the plaintiff's] actions or the subject of possible discipline by [the defendant]" in employee's retaliation action against employer).[5]

Broadcom's claim that the percentage of its workforce that is male constitutes "private company data" is similarly insufficient to satisfy its burden.  Broadcom's competitors would not be advantaged in any way by knowing the number of males Broadcom employs.  *See Basaraba,* 2013 WL 4517892 at *3 (finding that a complaint disclosing information relating to "private and confidential business matters" could not be sealed absent a showing that the complaint would release trade secrets); *see also Electronic Arts*, 298 Fed. App'x at 569-70 (9th Cir. 2008) (adopting, for purposes of sealing, the Restatement's definition of "trade secret" as "any formula, pattern, device or compilation of information *which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors* who do not know or use it" (emphasis added).)

Broadcom cannot demonstrate with "specific factual findings" that the allegations in the complaint are a "vehicle for improper purposes, such as . . . to gratify private spite, promote public scandal, circulate libelous statements or release trade secrets."  *Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F. 3d at 1120.  Accordingly, the allegations regarding Broadcom's discriminatory and retaliatory practices are not subject to filing under seal.

---

[5] Moreover, Broadcom's overbroad interpretation of the CIAA has been consistently found to constitute an unlawful restriction of an employee's rights under Section 7 of the National Labor Rights Act.  *See, e.g., Flex Frac Logistics, L.L.C. v. N.L.R.B.*, 746 F. 3d 205, 209 (5th Cir. 2014) (invalidating confidentiality clause precluding employees from "discuss[ing] terms and conditions of employment, including wages, outside the company").

**B.**     **The Complaint Reveals No Privileged Information.**

Under Federal Rule of Evidence 501, issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law.  *See also United States v. Ruehle*, 583 F. 3d 600, 608-609 (9th Cir. 2009) (reversing district court's ruling applying California law to define the attorney-client relationship and the attorney-client privilege).  Where, as here, "the same evidence relates to both federal and state law claims," federal privilege law is the controlling rule.  *Wilcox v. Arpaio*, 753 F. 3d 872, 876-77 (9th Cir. 2014); *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F. 2d 100,103 (3rd Cir. 1982) ("[A]pplying two separate disclosure rules with respect to different claims tried to the same jury would be unworkable.")

Broadcom asserts privilege over facts that Ms. Davies learned from her investigations of a male executive's conduct which were undertaken in her HR role, and not in her role as a Broadcom attorney.  (*See* Davies Decl. ¶¶ 8-9; Gross Decl., Ex. A ¶¶ 10, 13, 18-19, 30-38, 50, 74, 87-88, 95.)  Because these facts underlie Ms. Davies' federal and state whistleblower and discrimination claims, federal common law applies to Broadcom's assertion of privilege.

**1.**     **The Attorney-Client Privilege Does Not Attach to the Allegations in the Complaint.**

Because in-house counsel often operate in a purely or primarily business capacity in connection with many corporate endeavors, under federal law, "the presumption [of privilege] that attaches to communications with outside counsel does not extend to communications with in-house counsel."  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1069 (N.D. Cal. 2011).  Instead, courts apply "heightened scrutiny" to claims that communications between in-house counsel and others within the company fall within the attorney-client privilege.  *Oracle America, Inc. v. Google, Inc.*, No. C-10-03561-WHA (DMR), 2011 WL 3794892, *4 (N.D. Cal. Aug. 26, 2011).  Such scrutiny requires the party asserting

1   privilege to "make a clear showing that the speaker made the communication for the

2   purpose of obtaining or providing legal advice." *ChevronTexaco*, 241 F. Supp. 2d at

3   1076.

4         Ms. Davies stopped working as in-house counsel for Broadcom in May 2012,

5   when she vacated her position in the legal department and transferred to the Human

6   Resources department as Senior Director of Policy & Investigations.  (Davies Decl.

7   ¶¶ 2-3.)  Accordingly, Ms. Davies did not provide any legal advice to Broadcom

8   after May 2012 and there was no attorney-client relationship between the Company

9   and Ms. Davies.

10        That Ms. Davies was licensed to practice law while employed in HR does not

11   change this result.  *See, e.g., Koumoulis v. Independent Financial Marketing Group,*

12   *Inc.*,  --- F.R.D. ----, 2013 WL 5934032, * 15 (E.D.N.Y. 2013) (holding that one's

13   "status as an attorney does not transform what would otherwise be human resources

14   and business communications into legal communications"); *2,022 Ranch L.L.C. v.*

15   *Superior Court*, 113 Cal. App. 4th 1377 (2003) (holding that evidence relating to

16   factual investigation was subject to discovery even though conducted by licensed

17   attorneys), disapproved on other grounds in *Costco Wholesale Corp. v. Superior*

18   *Court*, 47 Cal. 4th 725 (2009).  Indeed, her supervisors in both legal and HR

19   specifically told Ms. Davies upon transferring to HR that she was no longer

20   authorized to have privileged communications on behalf of the Company.  (Davies

21   Decl. ¶ 6.)  Moreover, Ms. Davies' successor in her HR Investigations role, Robert

22   Fitt, a non-attorney, currently carries out the same duties as did Ms. Davies when

23   she occupied the position (*Id.* ¶ 4).  *See Montebello Rose Co. v. Agricultural Labor*

24   *Relations Bd.*, 119 Cal. App. 3d 1, 32 (1981) (finding it "self-evident" that

25   communications relating to a task that "could have been conducted by a

26   nonattorney" were not privileged).

27        Broadcom has claimed that although Ms. Davies was not in-house counsel for

28   Broadcom, information relating to the investigations is privileged because in-house

1   counsel was involved in the investigations.  Contrary to Broadcom's assertion,

2   however, Ms. Davies did not conduct the investigations at issue "at the behest of

3   counsel."  In fact, for both investigations, non-attorneys directed Ms. Davies' work

4   (Davies Decl. ¶¶ 8-10).  *See United States v. ISS Marine Servs. Inc.*, 905 F. Supp. 2d

5   121, 130 (D.D.C. 2012) ("[A]rms-length coaching by counsel, as opposed to the

6   direct involvement of an attorney, undercuts the purposes of the attorney-client

7   privilege in the context of an internal investigation.  Clearly when an attorney is

8   absent from the information-gathering process, the original communicator has no

9   intention that the information be provided to a lawyer for the purposes of legal

10   representation.")

11        Moreover, in those rare instances when in-house counsel was involved in a

12   discussion relating to the investigations—none of which form the basis for Ms.

13   Davies' complaint—such involvement was solely for business purposes, not to

14   provide legal advice (Davies Decl. ¶ 9).  *See Koumoulis*, 2013 WL 5934032 at *14

15   ("Despite its legal content, human resources work, like other business activities with

16   a regulatory flavor, is part of the day-to-day operation of a business; it is not a

17   privileged legal activity.").

18              **2.**      **The Attorney Work-Product Doctrine is Not Applicable to**

19                          **the Allegations in the Complaint.**

20        Finally, Broadcom asserts that information related to the investigations is

21   precluded from disclosure in the Complaint through the work-product doctrine.

22   This, again, is without merit.

23        The attorney work-product doctrine is a rule of discovery that allows parties,

24   under limited circumstances, to refuse to disclose certain "documents and other

25   tangible things."  Fed. R. Civ. P. 26(b)(3).  Where, as here, discovery is not at issue,

26   the work-product doctrine is inapplicable.  *See United States ex rel. Goodstein v.*

27   *McLaren Reg'l Med. Ctr.*, No. 92-CV-72992-DT, 2001 WL 34091259, at *3 (E.D.

28   Mich. 2001) (denying motion to seal qui tam action over the government's

1   objections that the file contained work-product and finding the work-product

2   doctrine inapplicable "[b]ecause discovery [wa]s not at issue").

3       Further, the work-product doctrine limits only discovery of materials

4   "prepared in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).  Documents that

5   may be useful in litigation are not prepared "in anticipation of litigation" if they are

6   "prepared in the ordinary course of business or [] would have been created in

7   essentially similar form irrespective of litigation."  *United States v. Adlman*, 134 F.

8   3d 1194, 1202 (2d Cir. 1998).  Where litigation is anticipated, work-product

9   protection may extend only to the case for which it was prepared or for substantially

10  similar or related adjudications.  *See Ramsey v. NYP Holdings, Inc.*, No. 00

11  Civ.3478(VM)(MHD), 2002 WL 1402055 (S.D.N.Y. June 26, 2002) (in parents'

12  libel suit on behalf of minor son, ordering disclosure of documents prepared by their

13  parents' attorneys in anticipation of a possible criminal prosecution against them).

14      Here, the investigations at issue were conducted in the ordinary course of

15  business of HR and Internal Audit.  (Davies Decl. ¶¶ 8-11.)  To the extent

16  theoretically possible litigation was contemplated with respect to the employees who

17  had engaged in misconduct, the instant action has no relation to any such litigation.

18      Finally, even when privilege applies to communications or documents, neither

19  the work-product doctrine nor the attorney-client privilege protects underlying facts.

20  As one court observed, "the privilege protects only communications between a

21  lawyer and client.  It does not insulate underlying facts from the light of day."

22  *Dombrowski v. Bell Atl. Corp.*, 128 F. Supp. 2d 216, 219 (E.D. Pa. 2000), citing

23  *Upjohn v. United States*, 449 U.S. 383, 395 (1981); *Vallabharpurapu v. Burger*

24  *King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011) ("Although the work-product

25  doctrine protects documents, it does not protect factual information within the

26  documents.").  The Complaint discloses nothing more than the underlying facts

27  involved in the investigations.

28      In sum, Broadcom cannot satisfy its burden to demonstrate that any of the

-15-

1 | information related to the investigations is subject to privilege.

2 | **V.     <u>CONCLUSION</u>**

3 |     For all of the foregoing reasons, Ms. Davies respectfully requests that the

4 | Court issue an order to have the unredacted Complaint filed in the public record and

5 | deemed the operative complaint.

6

7 | DATED:  June 22, 2015                 GREENBERG GROSS LLP

8

9

10 |               By:       /s/ Adrianne E. Marshack

11 |                   Alan A. Greenberg

                  Wayne R. Gross

12 |                   Adrianne E. Marshack

                  Leanna Costantini

13 |                   Attorneys for Plaintiff Jennifer Davies

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28