1  LYNNE C. HERMLE (STATE BAR NO. 99779)
   JOSEPH C. LIBURT (STATE BAR NO. 155507)
2  LINDSEY C. HULSE (STATE BAR NO. 258514)
   ORRICK, HERRINGTON & SUTCLIFFE LLP
3  1000 Marsh Road
   Menlo Park, California  94025
4  Telephone:   650-614-7400
   Facsimile:    650-614-7401
5  lchermle@orrick.com
   jliburt@orrick.com
6  lhulse@orrick.com

7  Attorneys for Defendant
   Broadcom Corporation

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                 SOUTHERN DIVISION

12

13  JENNIFER DAVIES,                    Case No. 8:15-cv-00928-AG-JC

14           Plaintiff,                 **DEFENDANT BROADCOM
                                        CORPORATION'S NOTICE OF
15       v.                             MOTION AND MOTION TO
                                        COMPEL ARBITRATION AND
16  BROADCOM CORPORATION,               STAY ACTION; MEMORANDUM
                                        OF POINTS AND AUTHORITIES
17           Defendant.                 IN SUPPORT THEREOF**

18                                      Date:     July 27, 2015
                                        Time:     10:00 a.m.
19                                      Dept:     10D
                                        Judge:    Hon. Andrew J. Guilford
20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO COMPEL
                                        ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................1

II.    FACTUAL AND PROCEDURAL HISTORY .............................................3

III.   LEGAL DISCUSSION ...........................................................................6

    A.    The FAA Mandates Enforcement of Arbitration Agreements .............6

    B.    The Parties Agreed to Arbitrate Their Claims And Therefore The Arbitration Agreement Must Be Enforced ...................................8

        1.    The Parties Entered Into A Valid Agreement to Arbitrate .........8

        2.    Davies' Dispute is Within The Scope Of The Arbitration Agreement ...............................................................................9

        3.    The Arbitration Agreement Is Not Unconscionable ...............13

    C.    Any Argument That The Arbitration Agreement Is Unenforceable Pursuant To Armendariz Is Meritless In Light Of Concepcion...................................................................................15

        1.    Armendariz Is No Longer Good Law.....................................15

        2.    Armendariz Does Not Apply Because the RSU Agreements Were Not Mandatory As A Condition of Employment ...........................................................................17

        3.    In Any Event, The Arbitration Agreement Complies With The Armendariz Requirements .............................................18

    D.    The Action Must Be Stayed Pending Resolution Of The Arbitration ...................................................................................19

IV.    CONCLUSION ...................................................................................20

DEFENDANT'S MOTION TO COMPEL
ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

1

## TABLE OF CONTENTS

2

**Page**

3

4

5

## <u>FEDERAL CASES</u>

6

*Ambler v. BT Ams., Inc.*,

7
    964 F.Supp.2d 1169 (N.D. Cal. 2013)............................................................12

8

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 ......................................................................................*passim*

9

*Beard v. Santander Consumer USA, Inc.*,

10
    2012 U.S. Dist. LEXIS 53882 (E.D. Cal. 2012).............................................16

11

*Burnett v. Macy's West Stores Inc.*,

12
    No. 1:11-cv-01277 LJO SMS, 2011 WL 4770614 (E.D. Cal. Oct. 7, 2011) ....17

13

*Chiron Corp. v. Ortho Diagnostics Systems, Inc.*,

14
    207 F.3d 1126 (9th Cir. 2000).........................................................................9

15

*Circuit City Stores v. Ahmed*,

16
    283 F.3d 1198 (9th Cir. 2002).......................................................................14

17

*CompuCredit Corp. v. Greenwood*,

18
    __ U.S. __, 132 S. Ct. 665 (2012) .....................................................................8

19

*Cox v. Ocean View Hotel Corp.*,

20
    533 F.3d 1114 (9th Cir. 2008).........................................................................8

21

*Fleet Tire Service of North Little Rock v. Oliver Rubber Co.*,
    118 F.3d 619 (8th Cir. 1997)...........................................................................9

22

*Flores v. Jewels Marketing & Agribusiness*,

23
    2007 WL 2022042, p. *6 (E.D. Cal., July 9, 2007, No. 07-334........................10

24

*Hopkins & Carley, ALC v. Thompson Elite*,

25
    2011 U.S. Dist. LEXIS 38396 (N.D. Cal. 2011).............................................12

26

*Ingle v. Circuit City Stores, Inc.*,

27
    328 F.3d 1165 (9th Cir. 2003).........................................................................8

28

DEFENDANT'S MOTION TO COMPEL
ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

1

**TABLE OF AUTHORITIES**
(continued)

2                                                                          **Page**

3

4

5    *Johannsen v. Morgan Stanley,*

6        2012 U.S. Dist. LEXIS 5367 (E.D. Cal. 2012)................................................12

7    *Kilgore v. Keybank Nat'l Assoc.,*

8        718 F.3d 1052 (9th Cir. 2013) (*en banc*)....................................................*passim*

9    *Laughlin v VMWare, Inc.,*
         2012 U.S. Dist. LEXIS 12262 (N.D. Cal. 2012)..............................................12
10

11   *Management & Technical Consultants S.A. v. Parsons-Jurden Internat. Corp.,*
         820 F.2d 1531 (9th Cir. 1987)............................................................................9
12

13   *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
         473 U.S. 614, 624 n. 13 (1985). .......................................................................10
14

15   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
         460 U.S. 1 (1983)........................................................................................7, 12
16

17   *Oguejiofor v. Nissan,*
         No. C-11-0544 EMC, 2011 WL 3879482 (N.D. Cal. Sept. 2, 2011) ...............17
18

19   *Perry v. Thomas,*
         482 U.S. 483 (1987)............................................................................................6
20

21   *Rent-A-Center, West, Inc. v. Jackson,*
         561 U.S. 63 (2010)..............................................................................................6
22

23   *Ruhe v. Masimo Corp.,*
         No. SACV 11-00734-CJC(JCGx), 2011 WL 4442790 (C.D. Cal. Sept. 16, 2011)
         .............................................................................................................................17
24

25   *Simula, Inc. v. Autoliv, Inc.,*
         175 F.3d 716 (9th Cir. 1999)............................................................................10
26

27   *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.,*
         559 U.S. 662 (2010)............................................................................................7

28

DEFENDANT'S MOTION TO COMPEL
ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

*United States v. Gonzales,*
   520 U.S. 1 (1997)...................................................................................9

*Velazquez v. Sears,*
   No. 13cv680-WQH-DHB, 2013 WL 4525581 ((S.D. Cal. Aug. 26, 2013).......14

**State Cases**

*Armendariz v. Foundation Health Psychare Services, Inc.,*
   24 Cal.4th 638 (2000) ...............................................................*passim*

*Bono v. David,*
   147 Cal.App.4th 1055 (2007)..........................................................12

*Coast Plaza Doctors Hosp. v. Blue Cross,*
   83 Cal. App. 4th 677 (2000).......................................................7, 12

*Craig v. Brown & Root, Inc.,*
   84 Cal. App. 4th 416 (2000)...........................................................8

*DLSE v. Transpacific Trans. Co.,*
   69 Cal. App. 3d 268 (1977)............................................................8

*Dotson v. Amgen, Inc.,*
   181 Cal. App. 4th 975 (2010).......................................................14

*Dream Theater, Inc. v. Dream Theater,*
   124 Cal.App.4th 547 (2004) ..........................................................10

*EFund Capital Partners v. Pless,*
   150 Cal. App. 4th 1311 (2007).....................................................7, 9

*Noodles Development, LP, v. Latham Noodles, LLC,*
   2009 WL 2710137, p. *1 (D. Ariz. Aug. 26, 2009 ...........................10

*Segal v. Silberstein,*
   156 Cal.App.4th 627 (2007)..........................................................10

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

**Federal Statutes**

9 U.S.C. § 2 ..................................................................................6, 13

29 U.S.C. § 215(a)(3).........................................................................5

Equal Pay Act .......................................................................2, 5, 6, 11

§ 3 of the FAA .............................................................................6, 20

**State Statutes**

California Labor Code § 229..............................................................6

Dodd-Frank Act ................................................................................4

Labor Code § 1102.5 .........................................................................6

Labor Code § 1102.5 (8) ...................................................................4

**Rules**

AAA Rule 9 ......................................................................................19

AAA Rule 12 ....................................................................................19

AAA Rule 39 ....................................................................................19

DEFENDANT'S MOTION TO COMPEL
ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

1
2

**TO PLAINTIFF JENNIFER DAVIES AND HER ATTORNEYS OF RECORD:**

3
4
5
6
7
8

     **PLEASE TAKE NOTICE** that on July 27 2015, at 10:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable Andrew J. Guilford, of the United States District Court for the Central District of California, Defendant Broadcom Corporation will and hereby does move the Court for an order compelling Plaintiff Jennifer Davies to neutral and binding individual arbitration and staying the action pending the outcome of the arbitration.

9
10
11
12
13
14
15
16

     The motion seeks to compel Plaintiff to binding individual arbitration on each and every claim for relief and to stay the action pending the outcome of the individual arbitration.  The motion is based on this notice of motion and motion, the Declarations of Joseph Liburt and Robert Fitt, the following Memorandum of Points and Authorities, the complete files and records in this action, any reply papers Defendant may file, any matters of which the Court takes judicial notice, and such materials or argument as may be presented to the Court in conjunction with the hearing on this motion.

17
18
19

     This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place both by letter and oral conversation between June 15 and June 23, 2015.

20
21
22

Dated:     June 25, 2015         LYNNE C. HERMLE
                            JOSEPH C. LIBURT
                            LINDSEY C. HULSE
                            Orrick, Herrington & Sutcliffe LLP

23
24
25
26
27
28

                        By:_____
                              JOSEPH C. LIBURT
                            Attorneys for Defendant
                            Broadcom Corporation

# I.      **INTRODUCTION**

Plaintiff Jennifer Davies' attempt to litigate in this Court is precluded by her clear written agreements to arbitrate all claims she asserts herein against Defendant Broadcom Corporation.  Davies and Broadcom entered into multiple valid and binding arbitration agreements, and Davies' claims fall squarely within their scope.

At the outset of her employment, and nine times thereafter, Davies signed a Restricted Stock Unit Issuance Agreement ("RSU Agreement") with an express arbitration provision. The arbitration provision's scope of coverage is exceedingly broad, covering "***any and all*** disputes or controversies between participant and the corporation arising out of, ***relating to***, or ***otherwise connected with*** this Agreement or the award of restricted stock units evidenced hereby or the validity, construction, performance or termination of this Agreement" (emphases added).  Both federal and California cases interpret this or similar language broadly, and Davies' allegations place her dispute with Broadcom squarely within that language.

The gravamen of Davies' complaint is gender discrimination, including claims for relief under both the federal and California Equal Pay Acts.  Central to her discrimination theory is that Broadcom intentionally and "willfully" awarded her less equity compensation than men, and specifically fewer RSUs (restricted stock units), due to her gender. These equity compensation allegations are central to her claims. *See, e.g.*, Complaint, ¶ 24 ("the compensation that Mr. Daniels received was substantially higher….vice presidents then received more than three times the value of equity as senior directors….The compensation discrepancy was further exacerbated by the value of cliff vesting awards"); ¶ 25 ("these compensation differences were particularly egregious….Daniels had less responsibility but was given the vice president title and concomitant economic benefits"); ¶ 28 ("Davies tried to explain to Ms. Timberman the importance of  receiving proper recognition and compensation for her contributions…--particularly considering Broadcom had readily afforded it to similarly situated males"); ¶ 53 ("Broadcom's retaliatory acts

have caused damages and harm..(including lost …stock options and awards"); ¶ 56 (Equal Pay Act claim:  "Broadcom discriminated against Ms. Davies in compensation on the basis of her gender…Mr. Daniels… received substantially higher compensation than Ms. Davies.  Specifically, as a vice president, Mr. Daniels was eligible for more than three times the value of equity than Ms. Davies as a senior director…Mr. Daniels received a significantly higher cliff vesting award than she did"); ¶ 57 ("Broadcom's decision to compensate Ms. Davies less than her male counterparts was willful and the result of the Company's bias and explicit preference for male employees"); ¶  59 ("Broadcom's wage discrimination has caused damages and harm to Ms. Davies (including lost …stock options and awards)"); ¶ 62 (Retaliation claim: "Ms. Davies again complained…that Mr. Daniels was receiving greater compensation for performing equal or lesser duties"); ¶ 63 (alleging retaliation included "denying Ms.  Davies the same compensation afforded to those employees selected for promotion to vice president"); ¶ 65 (seeking lost stock options and awards); ¶ 69 (Discrimination claim: "Broadcom intentionally discriminated by…denying Ms. Davies the same compensation"); ¶ 71 (seeking lost stock options and awards); ¶ 75 (Failure to prevent claim: "denying Ms. Davies the same compensation"); ¶ 78 (seeking lost stock options and awards").

Davies incorporates by reference her RSU/stock allegations into every claim in her Complaint.  *See ¶¶* 55, 61, 68, 73, 80, 86, 93, 101, 110.  Moreover, Davies seeks as damages for every claim both lost future RSU awards she claims she would have received but for her wrongful termination, and unvested RSUs previously awarded that she lost upon termination pursuant to the RSU Agreement's vesting terms.  *See ¶¶* 53, 59, 65, 71, 78, 84, 90, 99, 108, 117

As is discussed below, this lawsuit, with its consistent reliance on allegedly discriminatory decisions regarding equity compensation, "relates to" and is "otherwise connected with …the award of restricted stock units". Additionally,

1    because RSUs can be awarded only pursuant to the Agreement, her dispute also
2    "relates to" and is "otherwise connected with this Agreement". Consequently, on
3    these bases as well, her dispute "<u>relates to</u>" and is "<u>otherwise connected with</u>" the
4    Agreement, the award of restricted stock units, and the "construction, performance
5    or termination of this Agreement". Davies' allegations plainly land this dispute in
6    arbitration pursuant to her RSU Agreements.

7          Even if the Agreements' coverage of this dispute were ambiguous, federal
8    and California authorities agree that given the strong public policy favoring
9    arbitration, any doubts concerning the scope of an arbitration provision must be
10   resolved in favor of arbitration.  Davies' allegations here make arbitration coverage
11   more than a reasonable interpretation of the RSU Agreement. Broadcom requests
12   that the Court order Davies to arbitrate her claims as she agreed to do, and dismiss
13   this litigation in its entirety, or in the alternative stay the litigation pending
14   arbitration.

15   **II.      FACTUAL AND PROCEDURAL HISTORY**

16         Broadcom hired Davies, an attorney licensed to practice law in California, as
17   the Human Resources General and Administrative Counsel in the Legal department
18   on October 16, 2006.  Declaration of Robert Fitt ("Fitt Decl."), ¶ 4.  Upon hire,
19   Broadcom granted Davies 4,000 units of common stock and Davies executed an
20   RSU Agreement on February 7, 2007.  Fitt Decl., ¶ 5.  Broadcom granted Davies
21   nine additional stock awards, and Davies executed an RSU Agreement in
22   consideration of each award, most recently on February 27, 2014.  Fitt Decl., ¶ 5.
23   Each RSU Agreement contains an identical provision stating that arbitration is
24   mandatory for "any and all disputes or controversies between Participant and the
25   Corporation arising out of, relating to, or otherwise connected with this Agreement
26   or the award of restricted stock units evidenced hereby or the validity, construction,
27   performance or termination of this Agreement."  Fitt Decl., ¶ 6 and Exhibit A
28   thereto.  Each RSU Agreement specifies that it is governed by the FAA and by the

American Arbitration Association National Rules for the Resolution of Employment Disputes.  Fitt Decl., ¶ 6 and Exhibit A thereto.

On April 25, 2012, Davies voluntarily transferred from the Legal to the Human Resources department to assume the newly created role of Head of Policy and Investigations.  Fitt Decl., ¶ 8.  In March 2014, Davies assumed the position of Senior Director, Group Human Resources Business Partner for Broadcom's MPS unit.  Fitt Decl., ¶ 9.

In June 2014, Broadcom announced that, due to financial struggles, it was exploring selling or shutting down the MPS unit.  Fitt Decl., ¶ 10.  In July 2014, the company decided to shut down the MPS unit and lay off approximately 2,500 employees, one of whom was Davies.  Davies' termination date was September 26, 2014.  Fitt Decl., ¶ 10.  Broadcom offered Davies a severance package consisting of a $50,600 cash severance payment, a $216,207 cash payment for stock under an accelerated schedule, and three months of outplacement services.  Fitt Decl., ¶ 11.  Davies declined to accept the severance package.  *Id*.

On June 11, 2015, Davies sued, asserting nine claims for relief:  (1) violation of the Dodd-Frank Act; (2) violation of Equal Pay Acts under federal and California laws; (3) retaliation under FLSA, (4) discrimination under FEHA, (5) failure to prevent discrimination under FEHA, (6) retaliation under FEHA, (7), retaliation under Labor Code section 1102.5, (8) public policy wrongful termination, (9) fraud, and (10) negligent misrepresentation.  Complaint, ¶¶ 49-117.  Davies alleges, *inter alia*, that Broadcom unlawfully denied her equal stock equity and seeks damages in the form of "stock options and awards" for each claim for relief.  Complaint  ¶¶ 53, 59, 65, 71, 78, 84, 90, 99, 108, 117.  Specifically:

- Davies alleges that Mark Daniels was hired as a vice president to perform Davies' former duties as a senior director, but paid substantially more than she was paid because he is a man.  Complaint,

¶ 24.  Daniels' higher compensation included three times as much equity as Davies and three times the value of cliff vesting awards. *Id*.

- Davies incorporates this by reference into every claim for relief. Complaint, ¶¶ 49, 55, 61, 68, 73, 80, 86, 93, 101, 110.
- Daniels' higher compensation, including equity awards and cliff vesting, is the sole factual allegation Davies' cites as evidence of pay discrimination based on gender in support of her Equal Pay Act claim under federal and California laws.  Complaint, ¶ 56.
- Davies specifically relies on differences in stock awards as evidence proving liability on:
  - her claim for retaliation under 29 U.S.C. § 215(a)(3) (¶62 – "Ms. Davies again complained ... that Mr. Daniels was receiving greater compensation" and ¶63 – "Broadcom engaged in a course of retaliatory conduct, which included … denying Ms. Davies the same compensation afforded to those employees selected for promotion to vice president")
  - her gender discrimination claim (¶69 – "denying Ms. Davies the same compensation afforded to similarly situated or less qualified male employees who were selected for promotion to vice president")
  - her failure to prevent discrimination claim (¶75 – "denying Ms. Davies the same compensation afforded to similarly situated or less qualified male employees who were selected for promotion to vice president")
  - her FEHA retaliation claim (¶82 – "denying Ms. Davies the same compensation afforded to those employees selected for promotion to vice president")

o her claim for retaliation under Labor Code section 1102.5 (¶88 -
"denying Ms. Davies the same compensation afforded to those
employees selected for promotion to vice president"), and

o her public policy wrongful termination claim (¶94– "Ms. Davies
opposed Broadcom's practice of discrimination and harassment
by, among other things …complaining of Broadcom's failure to
comply with the Equal Pay Act").

## III.   LEGAL DISCUSSION

### A.   The FAA Mandates Enforcement of Arbitration Agreements

The "principal purpose" of the FAA is to "ensur[e] that private arbitration
agreements are enforced according to their terms." *AT&T Mobility LLC v.
Concepcion*, 131 S. Ct. 1740, 1748 (internal quotes and citations omitted).   The
Supreme Court has described the FAA "as reflecting both a liberal federal policy
favoring arbitration and the fundamental principle that arbitration is a matter of
contract." *Id*. at 1745.

This purpose is readily apparent from the FAA's text.  Section 2 makes
arbitration agreements "valid, irrevocable, and enforceable" as written (subject to a
savings clause); section 3 requires courts, at a party's request, to stay litigation of
arbitral claims pending arbitration of those claims "in accordance with the terms of
the agreement"; and section 4 requires courts to compel arbitration "in accordance
with the terms of the agreement" upon the motion of either party to the agreement.

Because arbitration is a highly favored means of settling disputes, the
Supreme Court has held that arbitration agreements "must be rigorously enforced."
*Perry v. Thomas*, 482 U.S. 483, 490 (1987) (arbitration agreement upheld and
arbitration compelled for unpaid wages claim under California Labor Code § 229);
*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (The FAA "places
arbitration agreements on an equal footing with other contracts, and requires courts
to enforce them according to their terms.") (internal citations omitted).  Indeed, the

- 6 -
DEFENDANT'S MOTION TO COMPEL
ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

law favoring arbitration is so strong that any doubts as to scope must be resolved in favor of arbitration:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitrability.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); Coast Plaza Doctors Hosp. v. Blue Cross*, 83 Cal. App. 4th 677, 686 (2000) (California's "strong public policy in favor of arbitration … has resulted in the general rule that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute").[1]

Recently, the Supreme Court vigorously emphasized that the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 131 S. Ct. at 1749 (quoting *Moses H. Cone*, 460 U.S. at 24); *see also Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control.") (internal quotes and citations omitted); *Kilgore v. Keybank Nat'l Assoc.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (*en banc*) ("The FAA was intended to 'overcome an anachronistic judicial hostility to agreements to arbitrate'... that resulted in 'courts' refusals to enforce agreements to arbitrate'") (citations omitted). The Supreme Court subsequently confirmed that this liberal policy favoring arbitration applies to

---

[1] Indeed, under California law, the party opposing arbitration has the burden to demonstrate that an arbitration clause cannot be interpreted to require arbitration of the dispute, and if there is any reasonable doubt whether the dispute is within the arbitration clause, that doubt must be resolved in favor of arbitration. *Coast Plaza*, 83 Cal. App. 4th at 686-687; *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1320-21 (2007).

1    federal statutes as well, "unless the FAA's mandate has been overridden by a

2    contrary congressional command." *CompuCredit Corp. v. Greenwood*, __ U.S. __,

3    132 S. Ct. 665, 669 (2012).

4    **B.**    **The Parties Agreed to Arbitrate Their Claims And Therefore The Arbitration Agreement Must Be Enforced**

5

6    The only prerequisite for an order compelling a case to arbitration is the

7    Court's determination that the parties entered into a valid agreement to arbitrate the

8    dispute. *Kilgore*, 718 F.3d at 1058 ("The FAA 'mandates that district courts *shall*

9    direct the parties to proceed to arbitration on issues as to which an arbitration

10    agreement has been signed.'") (emphasis in original). "The FAA limits courts'

11    involvement to determining (1) whether a valid agreement to arbitrate exists and, if

12    it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean*

13    *View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations omitted).

14    **1.**    **The Parties Entered Into A Valid Agreement to Arbitrate**

15    For the "validity" inquiry, courts generally apply ordinary state law contract

16    principles. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

17    Under California law, a contract is valid if there is mutual assent between the

18    parties and valid consideration. *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416,

19    420 (2000) (noting that general contract law principles determine whether an

20    arbitration agreement is binding); *see also DLSE v. Transpacific Trans. Co.*, 69 Cal.

21    App. 3d 268, 274-75 (1977) (stating mutual assent and consideration as the

22    elements of a valid contract).

23    The RSU Agreement here meets these validity requirements. Davies agreed

24    to ten separate RSU Agreements and the included arbitration provision as a

25    condition of Broadcom awarding her RSUs. Broadcom gave valid consideration

26    for her agreement to arbitrate by awarding RSUs and agreeing to arbitrate any

27    claims it may have against Davies. Accordingly, the Agreement is valid.

28

### 2. <u>Davies' Dispute is Within The Scope Of The Arbitration Agreement</u>

The RSU Agreement's arbitration provision states that "any and all disputes or controversies between participant and the corporation arising out of, relating to, or otherwise connected with this Agreement or the award of restricted stock units evidenced hereby or the validity, construction, performance or termination of this Agreement shall be settled exclusively by binding arbitration." Fitt Decl., ¶ 6 and Exhibit A thereto. Davies' dispute with Broadcom falls squarely within the scope of this arbitration language as a result of her allegations here.

The scope of the arbitration provisions here are framed as broadly as can be. First, the arbitration provisions use the word "any" to signal their broad scope. "Read naturally, the word 'any' has an expansive meaning: 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales,* 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary (1976) p. 97). As the Second District explained, when interpreting an arbitration agreement governing "*any* problem or dispute," "[t]hat contractual language is both clear and plain. It is also very broad." *EFund Capital Partners v. Pless*, *supra*, 150 Cal.App.4th at p. 1322 (emphasis in original); see also *Management & Technical Consultants S.A. v. Parsons-Jurden Internat. Corp.,* 820 F.2d 1531, 1534-1535 (9th Cir. 1987) ("constru[ing] the word 'any' broadly" when interpreting an agreement to arbitrate). Indeed, lest there be any doubt as to breadth, the arbitration provisions here gild the lily by using the phrase "any and all".

Next, the arbitration provisions cover "any and all disputes or controversies … *arising out of, relating to, or otherwise connected with*". Such language is "broad and far reaching." *Chiron Corp. v. Ortho Diagnostics Systems, Inc*., 207 F.3d 1126, 1131 (9th Cir. 2000); see also *Fleet Tire Service of North Little Rock v. Oliver Rubber Co.,* 118 F.3d 619, 620-621 (8th Cir. 1997) (the language "arising out of or relating to" "constitutes the broadest language the parties could reasonably

- 9 -

use to subject their disputes" to arbitration).

And in the precise context of interpreting arbitration agreements, courts repeatedly have explained that "the phrase *or relating to*" demonstrates that an arbitration agreement is meant to be expansive. *Dream Theater, Inc. v. Dream Theater,* 124 Cal.App.4th 547, 554 n. 1 (2004) (the California Practice Guide: Alternative Dispute Resolution "cites examples of common 'broad' versus 'narrow' arbitration clauses"; the provision at issue here, "arising out of or relating to," "is very broad"); *Flores v. Jewels Marketing & Agribusiness*, 2007 WL 2022042, p. *6 (E.D. Cal., July 9, 2007, No. 07-334) ("Arbitration agreements that use phrases such as 'arising out of or relating to' or 'arising in connection with' have broad arbitration clauses, whereas arbitration agreements that use only phrases such as "arising hereunder" without more, cover a much narrower scope of disputes."). The Ninth Circuit, when confronted with similarly broad language—"arising in connection with,"[2]—has explained that "[t]o require arbitration, [the] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause …." *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 624 n. 13 (1985)).

Given this capacious language, Davies' dispute plainly "relates to" and is "otherwise connected with" the RSU Agreement, the award of restricted stock

---

[2] This language and "arising out of or relating to" are similarly broad. See *Noodles Development, LP, v. Latham Noodles, LLC,* 2009 WL 2710137, p. *1 (D. Ariz. Aug. 26, 2009, No. 09-1094) (citing *Simula* when interpreting "arising out of or relating to"); *Flores v. Jewels Mktg. & Agribusiness*, *supra*, 2007 WL 2022042, at p. *6 (describing both phrases as broad); *Dream Theater, Inc. v. Dream Theater*, *supra*, 124 Cal.App.4th at p. 554 n. 1 (citing *Simula* as an example of language that courts have interpreted broadly alongside "arising out of or relating to"). Here, the RSU Agreements' inclusion of multiple terms ("arising out of, relating to, or otherwise connected with") conveys the broadest possible scope. Consistent with the commonplace contract interpretation principle that contract terms should not be interpreted as mere "surplusage", the RSU Agreements' inclusion of both "relating to" and "otherwise connected with" suggests the drafter was seeking to cover every possibility. *See Segal v. Silberstein*, 156 Cal.App.4th 627, 633 (2007) (courts view language of contract as a whole and, if possible, "give effect to every provision and avoid rendering any part of an agreement surplusage").

1    units, and the construction, performance and termination of the RSU Agreement.

2    At a minimum, Davies' allegations, set forth above, "touch matters" covered by the

3    RSU Agreement.

4         But Davies' allegations go beyond the necessary and sufficient mere

5    "touch[ing] matters" covered by the RSU Agreements.  Central to Davies' theory of

6    discrimination is that Broadcom awarded her fewer RSUs than men due to her

7    gender.  *See, e.g.*, Complaint, ¶¶ 24, 56 (Equal Pay Act claim:  "Broadcom

8    discriminated against Ms. Davies in compensation on the basis of her gender…Mr.

9    Daniels… received substantially higher compensation than Ms. Davies.

10   Specifically, as a vice president, Mr. Daniels was eligible for more than three times

11   the value of equity than Ms. Davies as a senior director…Mr. Daniels received a

12   significantly higher cliff vesting award than she did."), ¶ 59 ("Broadcom's wage

13   discrimination has caused damages and harm to Ms. Davies (including lost …stock

14   options and awards)").  Thus, her dispute "relat[es] to" and is "otherwise connected

15   with …the award of restricted stock units".  Because RSUs can be awarded only

16   pursuant to the RSU Agreement, her dispute also "relat[es] to" and is "otherwise

17   connected with this Agreement".  Davies incorporates by reference these RSU

18   allegations into every claim in her Complaint.  *See* Complaint, ¶¶ 53, 59, 65, 71, 78,

19   84, 90, 99, 108, 117. In addition, Davies seeks as damages in every claim for relief

20   both lost future RSU awards she claims she would have received but for her

21   wrongful termination, and unvested RSUs previously awarded that she lost upon

22   termination pursuant to the RSU Agreement's vesting terms.  Complaint, ¶¶ 53, 59,

23   65, 71, 78, 84, 90, 99, 108, 117 [3]  Consequently, on these bases as well, her dispute

24   "relat[es] to" and is "otherwise connected with" the Agreement, the award of

25   restricted stock units, and the "construction, performance or termination of this

26   Agreement".

27   ---

[3] Davies seeks to recover alleged lost stock options and stock awards for each claim for relief.
      *See* Complaint ¶¶ 53, 59, 65, 71, 78, 84, 90, 99, 108, 117 defining "damages and harm" to
      include "stock options and awards."

28

California state and federal courts have compelled arbitration based on the same or similar language, holding it broad enough to include all statutory, tort, and contractual claims arising out of employment.  *See Bono v. David*, 147 Cal.App.4th 1055 (2007) ("the decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is 'broad' or 'narrow.'  A 'broad' clause includes those using language such as 'any claim arising from or related to this agreement"), cited and relied on by *Laughlin v VMWare, Inc*., 2012 U.S. Dist. LEXIS 12262 (N.D. Cal. 2012); *Johannsen v. Morgan Stanley*, 2012 U.S. Dist. LEXIS 5367 (E.D. Cal. 2012); *Ambler v. BT Ams., Inc.*, 964 F.Supp.2d 1169 (N.D. Cal. 2013) (court compelled arbitration for discrimination and wrongful termination claims because of "broad" arbitration clause in Confidential Information and Inventions Assignment Agreement that provided for arbitration for "any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement"), citing to and relying on *Bono, supra*; *Hopkins & Carley, ALC v. Thompson Elite*, 2011 U.S. Dist. LEXIS 38396 (N.D. Cal. 2011) (court compelled arbitration of tort claims where Customer Agreement for software contained arbitration clause requiring parties to submit "any dispute arising under this Agreement" to arbitration; while Ninth Circuit had construed scope of arbitration language "disputes arising under/out of" without more to be relatively narrow (whereas inclusion of "relating to" is much broader), the inclusion of "any dispute" in arbitration provision required Court to interpret scope of arbitration broadly under either Ninth Circuit or California law).

Finally, even if arbitration coverage here were merely one reasonable interpretation as to which there were doubts, it is black-letter law that the Court must resolve any doubts in favor of arbitration.  *Moses H. Cone*, supra, 460 U.S. at 24-25; *Coast Plaza*, supra, 83 Cal. App. 4th at 686-687.  Here, there is no doubt that this dispute falls within the scope of the RSU Agreements' arbitration provision,

DEFENDANT'S MOTION TO COMPEL
ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

but any doubts must be resolved in favor of arbitration.  At an absolute minimum, Davies' allegations make arbitration coverage a reasonable interpretation of the RSU Agreement. Accordingly, arbitration must be ordered.

### 3.    The Arbitration Agreement Is Not Unconscionable

Davies may contend that despite the existence of a valid Arbitration Agreement that covers her claims, the Arbitration Agreement should not be enforced because it is unconscionable under the FAA's savings clause.  This argument would fail.

The FAA includes a savings clause that allows arbitration agreements to be invalidated only "upon such grounds as exist at law or in equity for revocation of any contract."  9 U.S.C. § 2; *Kilgore,* 718 F.3d at 1058.

The savings clause preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not "applied in a fashion that disfavors arbitration."  *Concepcion*, 131 S. Ct. at 1748.  Under California law, unconscionability has both a procedural and a substantive element.  *Kilgore,* 718 F.3d at 1059.  In analyzing these two elements, courts use a sliding scale approach.  "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion and vice versa."  *Id.* at 1058.  No matter how heavily one side of the scale tips, however, **both** procedural and substantive unconscionability are required for a court to hold an arbitration agreement unenforceable.  *Id.*

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power."  *Concepcion, supra,* 131 S.Ct at 1745, citing to *Armendariz v. Foundation Health Psychare Services, Inc.,* 24  Cal.4th 638 (2000). Davies cannot claim with a straight face that she was "surprised" by the Arbitration Agreement. The ten separate RSUA Agreements that she signed contained the

1  identical arbitration language which was <u>in bold font and all capital letters</u>  above

2  her signature block.[4]

3      Further, the Arbitration Agreement is not oppressive, since it was not made

4  as a condition of her employment, but rather in consideration for receiving a stock

5  award, a beneficial but not mandatory part of Davies' employment.  As a matter of

6  law, an arbitration agreement is not procedurally unconscionable if the employee

7  can opt out of it and keep her job.  *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1059

8  (9th Cir. 2013) (en banc); *Circuit City Stores v. Ahmed*, 283 F.3d 1198, 1199–1200

9  (9th Cir. 2002); *Velazquez v. Sears*, No. 13cv680-WQH-DHB, 2013 WL 4525581

10  ((S.D. Cal. Aug. 26, 2013) at *6 (agreement not procedurally unconscionable due to

11  ability to opt out).  In *Ahmed*, the Ninth Circuit held that an employer's arbitration

12  agreement was not procedurally unconscionable as a matter of law when the

13  employee was given a meaningful opportunity to opt out.  *Id.*, 283 F.3d at 1199–

14  1200.

15      Similarly, Davies was free to reject the RSU Agreement by declining to

16  accept the RSUs.  Each of the ten separate RSU Agreements that she signed was of

17  her own free will, and the consequence of not signing any of these agreements

18  would have been simply to forgo an extra benefit and would not have resulted in the

19  loss of employment.  Davies did not have to accept the RSU Agreement at all as a

20  condition of employment.

21      Because Davies did not have to accept the RSU Agreement as a condition of

22  employment, she cannot show procedural unconscionably.  Without a finding of

23  procedural unconscionability, the Court cannot hold the Arbitration Agreement

24  unenforceable.

25

26  [4]  In addition, Davies' sophistication – she is a lawyer – rebuts any allegation of surprise or
    oppression.  *See Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010) (minimum degree of

27  procedural unconscionability when employee was not an "uneducated, low-wage employee
    without the ability to understand that he was agreeing to arbitration" but "was the opposite—a

28  highly educated attorney, who knowingly entered into a contract containing an arbitration
    provision in exchange for a generous compensation and benefits package").

- 14 -              DEFENDANT'S MOTION TO COMPEL
                                                                ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

1    There also is no substantive unconscionability in the Arbitration Agreement.

2  Substantive unconscionability requires a showing that the terms of the agreement

3  are "overly harsh or one-sided results."  *Concepcion, supra*, 131 S.Ct at 1745,

4  citing to *Armendariz, supra*, 24 Cal.4th at 114.  The Arbitration Agreement

5  provides for mutuality of terms, such as the fact that both parties must arbitrate

6  disputes arising under the RSUA Agreement, and other terms that are one-sided <u>in</u>

7  <u>favor of</u> Davies, such as how arbitration will be conducted in the county where she

8  most recently was employed.   There is no substantive unconscionability.

9    **C.    Any Argument That The Arbitration Agreement Is Unenforceable Pursuant To *Armendariz* Is Meritless In Light Of Concepcion**

10

11    Davies may also challenge the validity of the Arbitration Agreement under

12  California law by arguing that it is unenforceable because it does not satisfy the

13  additional requirements identified in *Armendariz, supra*.  Any such challenge will

14  be meritless, both because *Armendariz* is no longer good law, and even if it is, the

15  Arbitration Agreement complies with it.

16    **1.    *Armendariz* Is No Longer Good Law**

17    Before *Concepcion,* the California Supreme Court addressed the issue of "the

18  validity of a mandatory employment arbitration agreement, *i.e.*, an agreement to

19  arbitrate wrongful termination or employment discrimination claims rather than

20  filing suit in court, which an employer imposes on a prospective or current

21  employee as a condition of employment."  *Armendariz,* 24 Cal. 4th at 90.  The

22  *Armendariz* Court held:

23    > We conclude that such claims are arbitrable if the arbitration permits an employee to vindicate his or her statutory rights . . . [I]n order for such vindication to occur, the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration.

24

25

26

27

28  *Id.* at 90-91, 102.

DEFENDANT'S MOTION TO COMPEL
ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]

1    In light of *Concepcion*, however, the *Armendariz* requirements are no longer

2    enforceable.  *See Kilgore*, 718 F.3d at 1058 (holding that *Concepcion* reemphasized

3    that the savings clause permits agreements to arbitrate to be invalidated by

4    "'generally applicable contract defenses, such as fraud, duress, or

5    unconscionability,'" but not by defenses that apply only to arbitration or that derive

6    their meaning from the fact that an agreement to arbitrate is at issue.).  The

7    *Concepcion* Court specifically recognized that state procedural requirements that

8    disfavor arbitration and are contrary to the FAA are preempted, and in doing so

9    struck down California's "*Discover Bank*" rule that prohibited class-action waivers

10   in arbitration agreements in certain consumer adhesion contracts.  The *Discover*

11   *Bank* rule was created to address the concern "that class proceedings are necessary

12   to prosecute small-dollar claims that might otherwise slip through the legal

13   system." *Concepcion*, 131 S.Ct. at 1752.  The Court, however, held that no matter

14   how desirable this concern, such a rule would be an "obstacle to the

15   accomplishment and execution of the full purposes and objectives of the [FAA]."

16   *Id*. ("[s]tates cannot require a procedure that is inconsistent with the FAA, even if it

17   is desirable for unrelated reasons").

18   Similarly here, the *Armendariz* requirements disfavor arbitration, only apply

19   to arbitration agreements, are contrary to the FAA, and are therefore preempted.

20   Similar to the *Discover Bank* rule at issue in *Concepcion*, the *Armendariz*

21   requirements were created to address the concern that arbitration agreements

22   improperly effectuate the waiver of certain unwaivable statutory rights.  But no

23   matter how important a court may find this concern, such a rule would be an

24   obstacle to the accomplishment and execution of the full purposes and objectives of

25   the FAA.

26   Indeed several courts have called *Armendariz* into question in light of

27   *Concepcion.  See Beard v. Santander Consumer USA, Inc*. 2012 U.S. Dist. LEXIS

28   53882 (E.D. Cal. 2012) (compelling arbitration, stating that "courts have questioned

*Armendariz's* continuing viability after *Concepcion*", and relying on cases that hold *Concepcion* abrogated *Armendariz*); *Oguejiofor v. Nissan*, No. C-11-0544 EMC, 2011 WL 3879482, at *3 (N.D. Cal. Sept. 2, 2011) (compelling arbitration; noting that *Armendariz* was abrogated in part by *Concepcion*); *Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx), 2011 WL 4442790, at *2 (C.D. Cal. Sept. 16, 2011) (compelling arbitration; "The parties dispute whether *Armendariz* merely creates a test for the general contract doctrine of unconscionability, or provides a separate set of 'requirements[.'] If *Armendariz* does the latter, such a requirement would appear to be preempted by the FAA under the Supreme Court's reasoning in *Concepcion*."); *Burnett v. Macy's West Stores Inc.*, No. 1:11-cv-01277 LJO SMS, 2011 WL 4770614, at *4 n. 3 (E.D. Cal. Oct. 7, 2011) (compelling arbitration; noting that "[a] few courts have questioned the vitality of the [*Armendariz*] requirements in light of the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*").

### 2. <u>*Armendariz* Does Not Apply Because the RSU Agreements Were Not Mandatory As A Condition of Employment</u>

In *Armendariz*, the court's analysis was limited to arbitration agreements that were imposed as a condition of employment.  See *Armendariz*, 24 Cal. 4th 83, 90 ("In this case, we consider a number of issues related to the validity of a mandatory employment arbitration agreement […] which an employer imposes on a prospective or current employee as a condition of employment.") (emphasis added). The *Armendariz* court repeated this limitation that the five *Armendariz* factors apply only to an arbitration agreement that is a condition of employment. *Armendariz* at 102 ("Thus, an employee who is made to use arbitration as a condition of employment 'effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'").

Here, the RSU Agreements were not "imposed … as a condition of employment."  *Armendariz*, 24 Cal. 4th at 113, 115.  To the contrary, the RSU

Agreements (including their arbitration provisions) were offered to certain Broadcom employees as an added benefit or incentive. This case is a poster-child for circumstances that explicitly do not implicate *Armendariz* concerns. As the *Armendariz* court stated, "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 24 Cal. 4th at 115. Here, the RSU Agreement was not a mandatory preemployment contract, no economic pressure was exerted as a condition of employment, and the RSU Agreement (including its arbitration provision) did not stand between Davies and necessary employment. The RSU Agreement was not imposed on Davies as a condition of being hired; at any time during her employment, she could have refused the benefit of additional RSUs if she wished to avoid the arbitration provision. The *Armendariz* factors simply do not apply here.

### 3. In Any Event, The Arbitration Agreement Complies With The *Armendariz* Requirements

Even assuming that the *Armendariz* requirements are still valid, the Arbitration Agreement complies with the requirements of *Armendariz* and is enforceable.

The *Armendariz* requirements for an enforceable arbitration agreement are: the agreement must provide for a neutral arbitrator; the agreement cannot limit the damages and other remedies available to the employee; the employee must be allowed to conduct sufficient discovery; the employer cannot require the employee to bear any expense that would not be required in a court action; and, the arbitrator must issue a written decision that includes the essential findings and conclusions on which the award is based. *Armendariz, supra,* 24 Cal.4th at 91, 103, 106, 110. The

Arbitration Agreement[5] satisfies all these factors:

- The parties mutually select a neutral arbitrator from the American Arbitration Association ("AAA").  See AAA Rule 12 "Number, Qualifications and Appointment of Neutral Arbitrators" (parties may agree on an arbitrator, or in the event they cannot, AAA shall select arbitrator ranked highest in order of mutual preference of the parties).
- There is no limitation on the remedies or damages that an employee may seek in arbitration.  The arbitrator may award any remedy or damages available under the applicable law in a court proceeding.  See Arbitration Agreement.
- Both parties are entitled to conduct adequate discovery in accordance with the AAA Employment Arbitration Rules and Procedures, including depositions, written discovery, and document exchange.  See AAA Rule 9.
- Broadcom is responsible for paying the fees of the arbitrator and other arbitration fees and costs unique to arbitration.  See Arbitration Agreement.
- The arbitrator shall issue a written decision and award within 30 days from the close of the arbitration and shall provide the reasons and basis for the award.  See AAA Rule 39.

Davies cannot show that the Arbitration's Agreement's procedures fail to meet the *Armendariz* requirements (to the extent they still have any force).  To the contrary, the Arbitration Agreement satisfies each of the *Armendariz* requirements.

## D.    The Action Must Be Stayed Pending Resolution Of The Arbitration

Broadcom also moves for an order staying the instant action pending

---

[5] The Arbitration Agreement provides that the arbitration proceedings shall be governed by the American Arbitration Association under its rules for the resolution of employment disputes.

1 | arbitration.  Section 3 of the FAA directs that a court <u>shall</u> issue an order staying
2 | judicial proceedings where an issue therein is referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  As shown above, this action is referable to arbitration.  Thus, a stay is mandatory pending the outcome of the arbitration proceedings.

## IV.   CONCLUSION

For the reasons stated above, Broadcom requests that the Court grant its motion to compel arbitration, order the matter to binding individual arbitration, and stay further judicial proceedings.

Dated:  June 25, 2015

LYNNE C. HERMLE
JOSEPH C. LIBURT
LINDSEY C. HULSE
Orrick, Herrington & Sutcliffe LLP

By:_____/s/JOSEPH C. LIBURT_____
JOSEPH C. LIBURT
Attorneys for Defendant
Broadcom Corporation

DEFENDANT'S MOTION TO COMPEL ARBITRATION [CASE NO. 8:15-CV-00928-AG-JC]